Joseph F. Elward, Plaintiff-Appellant, v. Mancuso Chevrolet, Inc., a Corporation of Delaware, Defendant-Appellee.

Gen. No. 53,708.

First District.

March 20, 1970.

Rehearing denied April 28, 1970.

Edward S. Macie, of Chicago, for appellant.

Griffin, Guinan & Griffin, of Chicago, for appellee.

ALLOY, J.

The record in this cause discloses that Joseph F. Elward owned a commercial building at 8102–4 Lincoln Avenue, Skokie, Illinois. The building was leased to Fritz Anderson Company in September 1954 in the lease which expired October 31, 1959. Fritz Anderson Company used the building as a sheet metal shop. Fritz Anderson Company thereafter on November 30, 1956, subleased the premises to defendant Mancuso Chevrolet, Inc. Defendant as sublessee immediately in December of 1956 began using the property as an autobody repair shop. In the original lease between Fritz Anderson Company and the plaintiff, a $550 security deposit was made and defendant Mancuso Chevrolet, Inc., took over such deposit as assignee at the time of the subleasing. The Fritz Anderson Company lease, which had been assigned to defendant, expired by its terms on October 31, 1959. Plaintiff then made a new lease with Mancuso Chevrolet, Inc. for the period commencing on November 1, 1959, and extending to October 31, 1964. The new lease to defendant began on November 1, 1959, at which time defendant was operating an autobody repair shop in the building. It continued to operate an automobile repair shop in the building during the period of the lease. The lease provided by its terms that it could be occupied "for any commercial purpose that is lawful under the ordinances of the Village of Skokie." The lease also provided as follows:

"Third: Lessee shall not . . . allow said premises to be used for any purpose that will increase the rate of insurance thereon . . . ."

By the terms of the lease it was provided that a rental of $305 per month was to be paid during the fifth year of the lease. The new lease also provided that the security deposit of $550 which was originally made by Fritz Anderson Company, was to be retained by plaintiff as se-

curity deposit for the new lessee, Mancuso Chevrolet, Inc. Such deposit, by the terms of the lease could be applied in payment of any sums due from lessee under its terms, and lessor was to return any portion of the deposit not previously applied in payment of such sums due.

The building had been insured by plaintiff for $20,000 through a certain agency from the time the Fritz Anderson Company lease began in 1954. At that time the building was rated "sheet metal shop" and when the defendant took over the building as a sublessee in 1956, defendant began using the building as an "autobody repair shop." The insurance rate for an autobody repair shop is higher than the rate for a sheet metal shop. The record shows that the insurance company did not discover the change in the use of the building until the spring of 1961 and at that time they increased the premium for the building insurance to reflect the new use of the building as an autobody repair shop. The net result was to increase plaintiff's insurance costs on the building during the balance of the term of the 1959 lease by $209.95.

On August 27, 1964, defendant wrote plaintiff and stated that they expected to vacate the premises at the termination of the term of the lease and enclosed a check for $60 which defendant explained could be used together with the $550 deposit to make a total of $610 in rent (at $305 per month for September and October). The check contained the notation "balance of all rental due on property located at 8102 Lincoln Avenue, Skokie, Illinois, to October 31, 1964." Plaintiff did not cash the check but wrote defendant that there might be an additional amount owing by defendant due to the increase in insurance costs on the building because of defendant's use of the premises. On September 28, 1964, plaintiff wrote defendant explaining there was an additional $209.95 due by reason of the increased insurance costs. On November 13, 1964, plaintiff again wrote defendant

and said that the $209.95 had been deducted from the security deposit and thus there was still $209.95 due on the rent for October. On November 23, 1964, plaintiff wrote that he would file suit if he received no reply. Defendant did not reply to any of the letters. On July 14, 1965, plaintiff filed suit and obtained judgment by confession (under a clause in the lease) on July 16, 1965. Defendant moved to open up the judgment; and on April 21, 1966, the judgment was opened up and defendant was given leave to appear and plead.

Thereafter, there were a series of continuances from June 20, 1966, to October 10, 1966, to December 15, 1966, and to March 28, 1967. The record does not indicate who requested the continuances and defendant in its brief states that they were by agreement after a request by plaintiff. Plaintiff has denied that this was so and referred to the fact that the record makes no showing as to who requested the various continuances. On March 2, 1967, plaintiff filed a motion for summary judgment and attached exhibits setting forth most of the facts recited in this opinion. On April 10, 1967, defendant also moved for summary judgment. A number of continuances thereafter were made from May 17, 1967, to June 1, 1967, to July 12, 1967, when the case was continued to an undetermined date. The record does not disclose which party requested these continuances and plaintiff contends it was by mutual agreement while defendant states that it was plaintiff who first requested the continuances in which defendant concurred. Thereafter, there was a new setting and a continuance to October 10, 1967, and thereafter to November 17, 1967, then to December 14, 1967, and again to February 28, 1968. On February 28, 1968, the case was again continued to March 22, 1968, and on March 22, 1968, the trial judge specifically set the matter for trial on July 31, 1968. From July 31, 1968, the case was continued to October 9, 1968, and it was placed upon the trial calendar.

424

By October 9, 1968, the case had been continued in one manner or another approximately 15 times. Plaintiff's attorney was the first one to appear before the court on October 9, 1968, and such attorney advised the judge that there were two motions for summary judgment which had not been heard and that plaintiff's attorney and defendant's attorney were seeking to work out an agreed statement of facts, and such attorney thereupon requested another continuance. The trial judge refused to grant such continuance. Plaintiff's attorney then requested that the court hear the motions for summary judgment or transfer the case to another judge who could hear the motions. The trial judge denied such request. The trial judge then permitted plaintiff's attorney to call the attorney for the defendant and the defendant's attorney came to the courtroom. Plaintiff's attorney stated that they were ready to argue the motions for summary judgment but the trial judge declined to hear such motions and indicated that the trial should proceed. Plaintiff's attorney thereupon sought to continue the case to the next day, but the trial judge told the attorney that if he could not begin presenting evidence at that time, the trial judge would dismiss the case. Plaintiff's attorney had no evidence to present and the judge entered an order as follows:

"October 9, 1968, Order

"Not prepared for trial.

"It is ordered by the Court that this cause be and the same is hereby dismissed out of this Court with prejudice."

Thereafter, on October 28, 1968, the plaintiff's attorney moved to vacate the October 9, 1968, order dismissing the case. Defendant filed no counterpleadings or affidavit. The motion to vacate the dismissal order was

denied by the court and plaintiff has appealed to this Court.

It is thus apparent that the basic issue in the case is whether the trial court abused its discretion when it dismissed the case on October 9, 1968, and later refused to vacate the order.

██ Under the law of this State (Athens v. Ernst, 342 Ill App 357, 96 NE2d 643; Sanitary Dist. of Chicago v. Chapin, 226 Ill 499, 80 NE 1017), the courts have inherent power to dismiss a lawsuit for want of prosecution. A failure to act or other circumstances which would justify the dismissal of an action for want of prosecution could necessarily vary from case to case. A determination of whether there has been a lack of prosecution which justifies a dismissal, is said to rest within the sound discretion of the trial court and the determination of the trial court will not be disturbed unless such court has abused its discretion (Epley v. Epley, 328 Ill 582, 160 NE 113).

Plaintiff contends on appeal in this Court that the cases of Yott v. Yott, 257 Ill 419, 100 NE 902, and Epley v. Epley, 328 Ill 582, 160 NE 113, support the contention of plaintiff that there was an abuse of discretion in the cause before us. We note that in the Yott case, a will contest was involved and there were a number of defendants to be served with a guardian ad litem to be named for an insane defendant. When the case was first set for trial it was found that two defendants had not been served and no guardian had been appointed although the case had been filed for six months. The Supreme Court in that case recognized that complainant had a duty to prosecute his case with diligence but the court also concluded that litigants should have an opportunity to present their case if they have not been guilty of negligence. Dismissal for want of prosecution in that case was reversed and the court stated (at page 423):

"Doubtless there had been inattention on the part of the solicitor for the complainants, and generally the client must suffer for the negligence of his solicitor, but the limitation fixed by the statute for suits to contest wills is very short and in this case had expired, so that the dismissal of the bill left the complainants without any opportunity to present their claims as to the invalidity of the will. In view of all the circumstances we think the court should have entered some rule to expedite the cause and to have given sufficient time to permit the complainants to secure service on the defendants not served and who did not appear."

We see no parallel in the Yott case to the case before us. Similarly, the Epley case was a will construction case. In the Epley case it was discovered that three or four defendants had not been served so the case was continued for a couple of months to allow service on them. The cause was thereafter continued from June until October when one of the defendants moved for a dismissal for want of prosecution because all of the defendants were not yet served. Dismissal was ordered and plaintiffs showed that defendants who were not served by April were served by June, but in June plaintiffs learned of additional defendants and had been attempting since then to locate them. The Supreme Court concluded that plaintiffs were in compliance with the request of the trial court in April 1926 and it was thus error to dismiss the case. It is apparent, from the two cases referred to, that there was not the delay or request for continuances which exist in the instant case.

In more recent Illinois cases which have been considered with a view to the crowded dockets (with years of waiting before a suit could be tried) the courts have, necessarily, been required to seek to expedite disposition of cases. In Gray v. Gray, 6 Ill App2d 571, 128 NE2d

427

602, the court reviewed the history of the increase in the litigation since World War II and referred to the assignment system which was adopted to help solve some of the problems. It was noted by the court that if a case is continued several times because one of the attorneys is busy with other matters, this is a warning to the busy attorney either to take more young attorneys into his firm to handle the firm's business or to stop taking additional cases himself if he does not have adequate time to handle them. The court stated (at page 579):

> "Moreover, it is within the knowledge of all of us that many a young and obscure lawyer, after waiting years before his case gets on the trial call, is then overwhelmed by the opposition of a more experienced or effective opponent who wins continuance after continuance. In despair he often settles for less than his case would warrant or he may lose his witnesses and his client. These facts are not all present in the instant case. They are set forth as background for the court's action, and it is in the light of that background that we must consider the facts in the case before us."

In the Gray case the matter was set for trial on October 29. The plaintiff, over objection by defendant, had the matter continued to November 4, then to the 17th, then to the 19th, and finally to November 22. On the 22nd of November an attorney from the firm representing plaintiff appeared in court and sought a further continuance on the ground that the attorney who was familiar with the case was engaged in other matters. It was shown that the other case involving such attorney was actually concluded on November 19. The motion for continuance was denied and plaintiff's attorney was not prepared to begin the trial, so the cause was dismissed. In affirming the action, the court stated (at pages 581–2):

428

"It is clear that plaintiff's attorney had exhausted his right to consideration of any further motions for continuance on account of engagement and that the trial court, far from abusing its discretion, did the only thing it could do under the rules. The assignment judge likewise did his duty."

█ In the case before us there were 15 continuances. While there is a question as to how many of these resulted from plaintiff's action, we must still have in view the fact that this was plaintiff's lawsuit and that plaintiff had the duty to prosecute. The court also had a duty to expedite the prosecution of plaintiff's lawsuit in order to be fair to other litigants who were waiting to have their lawsuits heard. Since there is nothing in the record to show that defendant was the cause of the unusual number of continuances, the trial court was justified in assuming that plaintiff had the responsibility to prosecute his lawsuit with diligence and that he failed to do so. The case was on the October 9, 1968, trial calendar. The court, on its own motion, in its discretion, determined that plaintiff was not prepared for trial and thereupon concluded that he was not adequately prosecuting his case after notice that the case should be tried on October 9, 1968. We would not be justified in reversing unless we find that there was an abuse of discretion on the part of the trial court. On the basis of the record we cannot conclude that there was an abuse of discretion, in view of the long period of time the case was on file and the successive number of continuances.

The judgment of the Circuit Court of Cook County will, therefore, be affirmed.

Affirmed.

RYAN, P. J. and STOUDER, J., concur.