MARIE KRISTAN, Plaintiff-Appellant, *v.* DONALD V. O'BRIEN, Defendant-Appellee.

First District (3rd Division)    No. 61254

Opinion filed May 25, 1977.

Hugh M. Matchett, of Chicago, for appellant.

Isham, Lincoln & Beale, of Chicago (Peter C. John and Michael A. Pope, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Marie Kristan alleged she was injured on September 28, 1959, at a food store when some bottles of root beer fell and struck her. She subsequently filed suit against the store and the bottling company charging negligence. In March 1966 that lawsuit was dismissed for want of prosecution. The instant lawsuit was filed in March 1971 against her attorney in the original lawsuit charging him with professional malpractice in allowing the case to be dismissed. The malpractice action proceeded to trial before a jury on May 10, 1974. On May 17, the trial court allowed the attorney for the

plaintiff to withdraw and over the objection of the defendant declared a mistrial and granted the defendant leave to file a motion to dismiss. Subsequently, the court ruled in favor of the defendant on the motion to dismiss with prejudice and this appeal follows.

The proceedings in the trial court on May 17 are the central issue in this case. The court on that date requested the defendant's permission to conduct a hearing with a court reporter, the plaintiff and her son, and the plaintiff's attorney outside of the defendant's presence. The defendant's attorney indicated that he had been advised by the plaintiff's attorney that the plaintiff's attorney intended to move to withdraw from the case and the defendant's attorney indicated that he had absolutely no objection to the court holding a hearing outside of his presence and his client's. The court indicated that the hearing might lead to a mistrial to which the defendant responded that he would like to be heard before that would occur. The court assured him that if they got to that point he would have to have the attorneys from both sides present.

The court proceeded to conduct the hearing in chambers. The plaintiff's attorney moved for leave to withdraw from the case because he claimed that the attorney-client relationship had disintegrated to such an extent that he felt he could no longer represent the plaintiff. The attorney related that prior to trial he prepared and his client signed a memorandum which said that she understood that there was an offer which he believed she should accept. Further, that she was informed of the probabilities of success and that she refused the offer and directed her attorney to proceed to trial. The memorandum was signed by the plaintiff and her son. The plaintiff's son, a principal of a Chicago school, was present with his mother throughout these proceedings.

Several days into the trial the plaintiff's attorney prepared a letter reciting many of the contradictions that appeared in the evidence in the plaintiff's case. The letter stated it was the attorney's professional opinion that although the offer had been withdrawn with the plaintiff's permission he would ask the defendant to reinstate the offer either at the original or a lesser amount. The letter also asked, "Do you direct me to proceed in spite of all these facts?" There was a space on the letter for a yes or no answer and signature lines. The plaintiff's attorney testified they signed the letter on the morning of May 16 before the trial resumed. The plaintiff's attorney testified that the signed letter was missing after the plaintiff and her son were alone in his office. The plaintiff's attorney's secretary said she saw the original of the letter signed by both the plaintiff and her son and that letter had the word "yes" on the blank line. Both the plaintiff and her son denied that they saw the letter or signed it the day before.

The plaintiff's attorney did not testify further. The court explained the

letter at great length to the plaintiff and her son and asked if they would sign it then and there. The plaintiff's son stated that they both had the greatest confidence in their lawyer and that they thought he was a "wonderful lawyer who had done everything possible for them." He had talked to them, guided them, counselled them and in turn the plaintiff and her son had followed every step that he had asked them to follow. However, the son stated that he and the plaintiff were too upset and did not want to sign anything. Perhaps they would sign it next week but they would not sign it at the present time. He stated that they wanted their attorney to continue with the case and to represent them and that they would be completely ready and willing to cooperate with him. The son acknowledged that "as far as this letter is concerned, he has read it to us. We are aware of it. My mother knows its content." He concluded that they trusted their attorney and he stated that they felt that they did not have to sign it. The plaintiff specifically stated that she wanted her lawyer to proceed with the case. The plaintiff's son emphasized and stated to the plaintiff's attorney, "Please proceed with our trial." The court commented that he was entitled to have that in writing. The plaintiff's son refused. The court commented that it could only conclude that their statements, even though under oath, are not meant and that they did not want their attorney to continue to represent them.

The court explained that if it allowed the attorney to withdraw there was no conceivable way that the trial could continue and that in the interest of justice he would have to declare a mistrial. In such an event the plaintiff would be allowed to retry the case at a later date. The court also stated that there may be some question of costs or sanctions because before he could declare a mistrial he would have to bring in the attorneys from the other side and allow them to be heard on the question. After making that statement he asked if they still persisted in their refusal to sign the letter. There was another colloquy in which plaintiff and her son asked what would happen and the court commented that it would probably grant the motion for a mistrial and the plaintiff would have about 30 days to secure another attorney so that the plaintiff would have her day in court. The plaintiff's son commented that they were upset and that they would be willing to sign the papers next week. The court then stated that the motion to withdraw was granted.

The plaintiff stated that she could not proceed without a lawyer. Counsel for the defendant was called into chambers. He stated that he was not moving for a mistrial. He was asking "for a dismissal with prejudice, a directed verdict or whatever is the appropriate final order, in this case." He stated that at that time it was his understanding the plaintiffs by an intentional act caused their attorney to withdraw after they were advised that the case was not going well for them. The court

explained that the plaintiff and her son had expressed their confidence in their lawyer and their desire to continue with the trial with him as their attorney.

The defendant argues on appeal that the entry of the mistrial and the subsequent dismissal were proper and were dictated solely by the voluntary acts of the plaintiff. The defendant further argues that because the case was not going well for the plaintiff there was sufficient incentive to seek a new trial. The defendant states that the trial court has an inherent power to control the conduct of the parties during the trial. He notes that Supreme Court Rule 219(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 219(c)) is a codification of that power. He cites the cases of *Hensley v. Shuler* (1972), 4 Ill. App. 3d 919, 282 N.E.2d 230; *Elward v. Mancuso Chevrolet Inc.*, (1970), 122 Ill. App. 2d 421, 259 N.E.2d 344; *Coatie v. Kidd* (1958), 17 Ill. App. 2d 289, 149 N.E.2d 646.

■■ None of the cases cited are remotely comparable to the case at bar. Regardless of the court's inherent power, under the facts of this case we do not believe that the court acted properly in dismissing the case. The plaintiff's attorney was apparently ready to proceed if the plaintiff and her son signed the letter. They refused to sign the letter but indicated over and over again during the proceedings in chambers that they were well satisfied with their attorney and wanted him to proceed with the trial. We see no significance in signing a document to that effect. The unequivocal statements of both the plaintiff and her son belie the defendant's contention that because the case was not proceeding well her deliberate conduct was designed to provoke a new trial. The court acted erroneously in granting a dismissal with prejudice.

■■ Defendant argues that he was blameless and that if the court should grant a new trial that the plaintiff should be required to pay defendant's costs and attorney's fees. He cites the New Hampshire case of *Guay v. Brotherhood Building Association* (1935), 87 N.H. 216, 177 A. 409, 413 to the effect that "counsel fees other than statutory costs" have been allowed under certain circumstances that include cases of enforcement of judicial authority as where misconduct of a party amounting to the contempt of court has caused the opposing party to incur counsel fees. The facts of this case do not amount to the conduct mentioned in *Guay*. Under the circumstances, we do not deem costs or attorney's fees appropriate.

As the court in the hearing in chambers noted, the plaintiff is entitled to her day in court. We agree. The judgment of the trial court is reversed.

Reversed.

SIMON, P. J., and McGILLICUDDY, J., concur.