[No. 30016-8-II.   Division Two.   December 21, 2004.]

*In the Matter of the Custody of* A.C., ET AL.

*In the Matter of the Marriage of* SUSAN CUMMING, *Respondent,* and MICHAEL ADAM CUMMING, SR., *Appellant.*

*Jeffrey J. Hatch* (of *Marsh & Higgins, P.C.*), for appellant.
*Jennifer K. Snider* (of *Reed & Johnson*), for respondent.

¶1 QUINN-BRINTNALL, C.J. — Michael A. Cumming Sr. appeals an amended parenting plan that gave limited visitation rights of his two children to the children's grandmother, Susan M. Cumming. Citing *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality), Michael asserts that the trial court unconstitutionally interfered with his right to parent his children. A court may not generally interfere with a fit parent's constitutional right to determine the best interest of his children. But *Troxel* does not preclude court-ordered visitation where the nonparent seeking visitation brings such a petition during the pendency of marriage dissolution proceedings between the children's parents, the nonparent has had legal custody of the children for a significant portion of their lives, and the parent objecting to visitation has failed to show a likelihood that such visitation would be detrimental to the children. Thus, we affirm the trial court's parenting plan.

## FACTS

¶2 Michael[1] married Julie Catherine Cumming on September 23, 1994. The couple had two children: a son, A.C., born on August 28, 1995, and a daughter, M.C., born on January 14, 1997. Julie began suffering from severe mental health problems in May 1997. Because Julie was unable to care for the children, members of the couple's church assisted her. In January 1998, Michael asked his mother Susan (the grandmother) to take the children back to Kansas, which she did. The arrangement was for six months, but because Julie's condition did not improve, the children continued to live with the grandmother in Kansas. In August 1999, Michael filed for divorce from Julie in

---

[1] First names are used for clarity.

Oregon and Julie filed for divorce in Clark County, Washington the next month.

¶3 Both parents eventually filed motions for custody of the children. In December 1999, the Clark County Family Court Services Coordinator recommended that the children remain in Kansas with the grandmother because neither parent was "emotionally connected or psychologically attached to either child." Clerk's Papers (CP) at 18. Apparently a commissioner of the Clark County Superior Court agreed[2] and the children continued to live with the grandmother. The grandmother did, however, bring the children to Oregon to see Michael in November 2000. After two weeks, the grandmother took the children back to Kansas, stopping in Denver to have M.C. examined for possible sexual abuse. In December 2000, the grandmother filed a nonparent custody petition for A.C. and M.C. in the Clark County dissolution action.

¶4 The Clark County Superior Court appointed a Guardian ad litem (GAL) in March 2001. In a report submitted in August 2001, the GAL recommended that the children live with Michael and have supervised visitations with Julie. She also recommended the grandmother be allowed to have telephone contact and visit the children periodically in Oregon. The children were returned to Michael on November 25, 2001. The grandmother pursued visitation rights and Michael filed a motion for summary judgment on this visitation claim. The trial court denied summary judgment on April 12, 2002, and issued a parenting plan on June 14, 2002. The plan awarded custody to Michael but gave the grandmother visitation rights pursuant to RCW 26.09.240.

¶5 On June 24, 2002, Michael filed a motion for reconsideration based on an allegation of sexual abuse against the grandmother that was being investigated. The allegation arose from the children's therapist, Joe Pargas, who testified that on April 4, 2002, M.C. told him the grandmother had "put Vaseline on [M.C.'s] privates." 2 Report of

---

[2] Our record does not contain the commissioner's order, but its ruling is referenced in the 2001 Guardian ad litem report.

Proceedings (RP) (Oct. 7, 2002) at 121. Pargas testified that he reported this allegation to the Department of Children's Services on April 9, 2002. The court determined that there was not a prima facie case made for the alleged abuse charge.

¶6 A month after filing the motion for reconsideration for the unfounded allegation of sexual abuse, Michael filed a declaration which brought up a question of a "blessing" administered on the children at the grandmother's request. Michael testified that when M.C. and A.C. returned to him after visiting with the grandmother in July 2002, they told him about the blessing, which requested that Julie and Michael would die and the children would be raised by their grandmother. Claiming religious privilege, the grandmother refused to be deposed regarding the blessing and failed to comply with the trial court's order to testify about the contents of the blessing. The trial court found her in contempt and issued an amended parenting plan, which reduced the grandmother's visitation. Michael appeals, claiming that the trial court lacked authority to grant the grandmother any visitation rights over his objection.

## ANALYSIS

¶7 Michael appeals four orders of the trial court: (1) the order denying summary judgment dated April 12, 2002; (2) the parenting plan final order dated June 14, 2002; (3) the order on reconsideration dated February 7, 2003; and (4) the amended parenting plan final order dated February 7, 2003.

¶8 On January 31, 2002, Michael moved for summary judgment, claiming that under *Troxel* the grandmother may not pursue visitation rights if Michael, as a fit parent, objects.[3] On March 11, 2002, the scheduled date for the summary judgment hearing, the court expressed its intent

---

[3] For purposes of this appeal, we assume that Michael is a fit parent. We note, however, that in the December 1999 Family Court Evaluation, it was reported that neither Michael nor Julie were "emotionally connected or psychologically attached to either child." CP at 442.

to facilitate an agreement that included Michael retaining custody and the grandmother being given visitation rights. The trial court resolved several issues and the court, Michael, and the grandmother crafted a visitation agreement during the hearing. The trial court denied summary judgment on April 12, 2002, and issued the parenting plan on June 14, 2002. The plan included court-ordered visitation with the grandmother consistent with the agreement reached during the March hearing. On reconsideration, the trial court issued an amended parenting plan on February 7, 2003. That plan also provided visitation for the grandmother.

█ █ ¶9 "[A] denial of summary judgment cannot be appealed following a trial if the denial was based upon a determination that material facts are in dispute and must be resolved by the trier of fact." *Johnson v. Rothstein*, 52 Wn. App. 303, 304, 759 P.2d 471 (1988). But the denial of summary judgment may be reviewed after the entry of a final judgment if summary judgment was denied based on a substantive legal issue. *Bulman v. Safeway, Inc.*, 96 Wn. App. 194, 198, 978 P.2d 568 (1999), *rev'd*, 144 Wn.2d 335, 27 P.3d 1172 (2001). The common issue in each of the orders is whether a fit parent can categorically deny his children contact with a grandmother who parented the children for a significant portion of the child's life. Although parental fitness is a factual issue, the trial court's authority is primarily a legal issue and we consider the scope of that authority to determine whether the trial court properly denied Michael's motion for summary judgment and granted the children visitation with their grandmother.

█ ¶10 Michael relies on the United States Supreme Court's recent opinion in *Troxel*, which established that a fit custodial parent has the "fundamental constitutional right to make decisions concerning the rearing of " their children, including whether a grandparent may have visitation with that child. 530 U.S. at 70. Although the impetus behind *Troxel* was the protection of the "fundamental constitutional right [of a fit parent] to make decisions concerning

the rearing of " their children,[4] *Troxel* did not hold that a fit parent's objection created a constitutionally impenetrable bar against grandparent visitation.

¶11 The *Troxel* Court[5] addressed former RCW 26-.10.160 (1994), which authorized child visitation rights to nonparents who had initially sought custody. *Troxel v. Granville*, 530 U.S. 57, 61, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Significantly, *Troxel* did not hold, as the Washington Supreme Court had,[6] that the statute was facially unconstitutional. 530 U.S. at 73. Holding only that the statute was unconstitutional as applied, the *Troxel* plurality articulated three alarming factors in the statute: (1) the statute effectively allowed any third party seeking visitation to subject to review at any time any decision by a parent concerning visitation with his or her children; (2) the statute did not require the trial court to accord any special weight to the parent's determination of what was in his or her child's best interests; and (3) the statute created an initial presumption, which the parent had to rebut, that visitation was in the children's best interests. 530 U.S. at 67-70.

¶12 In addition to these issues, the *Troxel* plurality also found it troubling that the grandparents were presumed to have a right to visitation and that the dispute was over only how much visitation they should receive. 530 U.S. at 71-73. According to the *Troxel* plurality, this factor, when coupled with the deficiencies in the statute, permitted a trial court to exercise unfettered discretion in substituting its judgment for that of a fit parent:

> [These factors] show that this case involves nothing more than a simple disagreement between the Washington Superior Court and Granville concerning her children's best inter-

---

[4] 530 U.S. at 70.

[5] Although *Troxel* was a plurality opinion, we believe the plurality opinion supplies the narrowest rationale for the Supreme Court's judgment, and thus, its analysis is the Court's holding. *See Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977).

[6] *See In re Custody of Smith*, 137 Wn.2d 1, 18-21, 969 P.2d 21 (1998).

ests. . . . As we have explained, the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a "better" decision could be made. Neither the Washington nonparental visitation statute generally—which places no limits on either the persons who may petition for visitation or the circumstances in which such a petition may be granted—nor the Superior Court in this specific case required anything more. Accordingly, we hold that [RCW] 26.10.160(3), as applied in this case, is unconstitutional.

*Troxel*, 530 U.S. at 72-73.

¶13 But *Troxel* is distinguishable from the case at hand. Here, the grandmother obtained visitation rights under RCW 26.09.240. This statute does not contain the provisions which *Troxel* found troubling. *See In re Parentage of C.A.M.A.*, 120 Wn. App. 199, 212-14, 84 P.3d 1253 (2004). First, the current statute limits when a nonparent may bring an action for visitation. The statute provides that a nonparent may petition for visitation only when the child's parent or parents have commenced certain actions, including legal separation, dissolution of marriage, or proceedings to modify a parenting plan. RCW 26.09.240(1). Importantly, the statute also limits who may petition for visitation by requiring any nonparent seeking visitation to show by clear and convincing evidence that he or she has an existing "significant relationship" with the child. RCW 26.09.240(3). It is only upon meeting this burden that visitation is presumed to be in the child's best interests. RCW 26.09.240(5)(a). This presumption can be rebutted by the parent if he or she can show a likelihood that visitation would be detrimental to the child's physical, emotional, or mental well-being. RCW 26.09.240(5)(a).

¶14 Because *Troxel* did not conclude that former RCW 26.10.160 was facially unconstitutional, and because the perceived deficiencies in that statute are not present in RCW 26.09.240, we reject Michael's assertion that, as a matter of law, a nonparent cannot bring a third party

visitation action.[7] We therefore will not reverse the parenting plan on this basis.

■ ¶15 Unlike in *Troxel*, the parent in this case sought to eliminate, not decrease, the petitioner's contact with the children. Pursuant to RCW 26.09.240(1), the grandmother filed her petition for visitation during the pendency of the dissolution proceeding between Michael and Julie. And pursuant to RCW 26.09.240(3), there was substantial evidence to find that the grandmother had a "significant relationship" with M.C. and A.C. It is undisputed that, up until the time of trial, the grandmother, at Michael's request, had custody and had parented the children for four years. This four-year period was over half of each child's young life. The grandmother had essentially become a de facto or psychological parent to both children when, at Michael's request, she raised them for nearly four years. Children become attached to nonparent adults who care for their physical and emotional needs for a protracted period of time. *In re Dependency of J.H.*, 117 Wn.2d 460, 468-69, 815 P.2d 1380 (1991) (defining de facto or psychological parent concept).

■ ¶16 Because there was clear and convincing evidence that the grandmother had a "significant relationship" with M.C. and A.C., she established a rebuttable presumption that visitation would be in the children's best interests. Beyond this presumption, the record shows that the trial court, unlike in *Troxel*, gave significant weight to Michael's considerations but found that in the unique situation affecting the Cummings, the best interests of the children were served through visitation with their grandmother. Michael did not initially attempt to refute this presumption. Instead, he agreed to a court-ordered visitation plan. It is this visitation plan from which he now appeals.

---

[7] Michael also relies on *In re Custody of Nunn*, 103 Wn. App. 871, 14 P.3d 175 (2000), which held that a nonparent, specifically a paternal aunt, does not have standing to bring a custody action against a fit parent having physical custody of a child. 103 Wn. App. at 888. *Nunn* is distinguishable because the nonparent was seeking to terminate the mother's parental rights and obtain full custody of the children. Here, the children's grandmother is not seeking to continue custody, only visitation.

¶17 A settlement is valid and enforceable if (a) it is in writing or on the record, (b) the intentions of the parties are clear, and (c) the principles of a contract are met. CR 2A; *In re Marriage of Ferree*, 71 Wn. App. 35, 39-40, 856 P.2d 706 (1993); *Stottlemyre v. Reed*, 35 Wn. App. 169, 171, 665 P.2d 1383, *review denied*, 100 Wn.2d 1015 (1983). Here, the record shows that on March 11, 2002, Michael did not intend to prevent "any contact [with the grandmother]" and that he outlined visitation somewhat in line with that suggested by the GAL. 1 RP (Mar. 11, 2002) at 25. During these negotiated proceedings, the court resolved several issues with Michael, Julie, and the grandmother, including visitation, transportation, supervision, telephone contact, counseling determinations, and school. The court incorporated these terms of the agreement into the June 14, 2002 parenting plan, and counsel for both the grandmother and Michael approved the plan.[8] From the record, it appears that there was an enforceable agreement which estopped Michael from challenging visitation granted under RCW 26.09.240.

¶18 Michael's motion for reconsideration of this parenting plan cited "[n]ewly discovered evidence" under CR 59(a)(4). CP at 191. Apparently, this newly discovered evidence was also Michael's attempt to show, pursuant to RCW 26.09.240(5)(a), that visitation would not be in the children's best interests. The newly discovered evidence claimed was a sexual abuse allegation and investigation against the grandmother. But the record shows this information was not newly discovered and that Michael was aware of this allegation in April 2002, two months before he agreed to the grandmother's visitation in the June 2002 parenting plan. Moreover, the court determined that there was not a prima facie case made for the alleged abuse and the investigation made no finding of sexual abuse. Michael knowingly agreed on March 11, 2002 (hearing), and on June

---

[8] RCW 2.44.010(1) provides that a settlement entered into by an attorney binds the client if the settlement was (1) presented in open court, or (2) signed by the party or that party's attorney.

14, 2002 (parenting plan), to allow the grandmother visitation with the children.

¶19 We turn to whether the July 2002 "blessing" administered on the children at the grandmother's request required that the trial court vacate the grandmother's visitation portion of the parenting plan. Michael made a declaration but did not file a motion for reconsideration based on the blessing incident, apparently relying on his original reconsideration motion. Nevertheless, the trial court reconsidered and amended the parenting plan to reduce the children's visitation with the grandmother.

¶20 As is well settled, we review a trial court's parenting plan for abuse of discretion. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). A court abuses its discretion if its decision is "manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989), *review denied*, 114 Wn.2d 1002 (1990). Although we find the alleged blessing ill considered and disturbing, Michael has not shown that the trial court, who had direct contact with the parties involved, abused its discretion in allowing the children limited visitation with a grandmother who was their primary caregiver and raised them for four years. Thus, we will not disturb it on appeal.

¶21 We affirm.

HUNT, J., concurs.

¶22 MORGAN, J. (dissenting) — The United States Supreme Court has said that "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel v. Granville*, 530 U.S. 57, 68-69, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). The majority gives no reason to doubt the care Michael is providing for his children. Nor does it give any reason to doubt Michael's

fitness as a parent. It merely disagrees with *Troxel* and holds, in effect, that the trial court was a better decision-maker than Michael—notwithstanding, paradoxically, the "ill considered and disturbing" nature of the alleged blessing. Majority at 857. I would not quarrel if the record really showed that Michael stipulated to the trial court's order under CR 2A, but the record does not so show. Believing that we are obligated to follow *Troxel*, I respectfully dissent.

Review granted and case remanded to the Court of Appeals at 155 Wn.2d 1011 (2005).