[No. 66308-9-I.   Division One.   May 29, 2012.]

GREENBANK BEACH AND BOAT CLUB, INC., ET AL., *Respondents*,
v. DALLAS K. BUNNEY ET AL., *Appellants*.

518

*John W. Widell*, for appellants.
*H. Clarke Harvey*, for respondents.

¶1 BECKER, J. — Appellants Dallas and Marylou Bunney built a home that exceeded the height limitation of a restrictive covenant. In a suit brought by the homeowners associations, the trial court ordered the house to be modified. The court also awarded attorney fees, concluding that appellants acted in bad faith when they knowingly built a nonconforming home. We affirm the judgment ordering the house to be modified but reverse the award of attorney fees. Prelitigation bad faith is not available as an equitable basis for an award of attorney fees where the actions found to be taken in bad faith did not pose a threat to the authority of the court.

## FACTS

¶2 The house in question was built in an Island County neighborhood within the plat of Holmes Harbor Estates, Division No. 1. The plat consists of more than 200 residen-

tial lots, 66 of which have homes constructed on them. Restrictive covenants recorded in the 1960s apply to all property within the plat.

¶3 The Bunneys acquired property in the plat on August 13, 2004. Their property is subject to a covenant that limits dwellings to a height of 15 feet. The plat has two homeowners associations: Greenbank Beach and Boat Club Inc. and Holmes Harbor Water Company Inc. The two associations adopted rules to clarify how the height of a dwelling is to be measured. They empowered a board of trustees to review construction plans for all new houses or modifications to ensure that height restrictions were complied with.

¶4 The Bunneys submitted construction plans. In late July 2007, the associations rejected the plans because the house would exceed the 15 foot height limit by at least 6 feet.

¶5 During a meeting of the board of trustees, the Bunneys provided more information, including an excavation plan and lot layout plan. At the meeting, Mr. Bunney was hostile, threatening, and belligerent. He told the board he would sue if he was not permitted to build the house at the height he wanted.

¶6 Efforts were made thereafter to try to get the Bunneys to comply with the height limit. Although Mr. Bunney made a few statements indicating he would submit revised plans, he did not do so. The attorney for the homeowners associations wrote to the Bunneys on November 19, 2007, before the Bunneys poured their foundation. The letter said that if the Bunneys started construction without approval, the associations would sue them and would submit the letter to the court to demonstrate that the Bunneys were acting in bad faith. The Bunneys proceeded to build their home as planned and completed it in November 2008.

¶7 The associations sued the Bunneys on May 14, 2008, for violation of the height restriction. The trial court re-

jected the Bunneys' summary judgment motion for dismissal, and the case went to a bench trial in October 2010.

¶8 The trial court found that the Bunneys did not make good faith efforts to resolve the concerns of the homeowners associations. They chose to construct their home with full knowledge that their plan exceeded the height restriction, that it had been rejected by the associations, and that it blocked the view of others in the neighborhood. The court found that despite evidence that some other homes were higher than 15 feet, the height restriction had not been abandoned. The court concluded that the Bunneys "acted in bad faith and proceeded at their own risk to build their home in accordance with the original rejected plan." The court entered judgment ordering the Bunneys to modify their home to comply with the height restriction.

¶9 The covenant does not contain a provision for prevailing party attorney fees. The homeowners associations moved for an award of attorney fees on the ground that the Bunneys acted in bad faith by building their home in violation of the covenant. The trial court granted the motion and ordered the Bunneys to pay $74,253.75 in attorney fees.

## MEANING OF "SUIT TO ENJOIN THE CONSTRUCTION"

¶10 Under the covenants, the height restriction cannot be enforced against a noncompliant homeowner unless a "suit to enjoin the construction" is commenced before the work is completed:

> In the event the Committee or its designated representative fails to approve or disapprove within thirty (30) days after plans or specifications have been submitted to it, or *in any event if no suit to enjoin the construction has been commenced* prior to the completion thereof approval will not be required and the related covenants shall be deemed to have been fully complied with.

(Emphasis added.)

¶11 The associations brought suit against the Bunneys well before they completed construction of their house, but the words "injunction" and "enjoin" do not appear in the complaint. It was styled a "Complaint for Declaratory Judgment." The Bunneys contend the trial court erred by denying their motion for summary judgment dismissal because the lawsuit was not a "suit to enjoin the construction."

¶12 The denial of summary judgment may be reviewed after the entry of a final judgment if summary judgment was denied based on a substantive legal issue. *In re Custody of A.C.*, 124 Wn. App. 846, 852, 103 P.3d 226 (2004), *rev'd on remand on other grounds*, 130 Wn. App. 157, 123 P.3d 121 (2005). Interpretation of covenant language is a substantive legal issue. The material facts related to that issue were not in dispute. The order denying summary judgment is properly before us.

¶13 The standard of review of an order of summary judgment is de novo, and the appellate court performs the same inquiry as the trial court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006).

¶14 In construing covenants, the primary objective is to determine the intent of the parties to the agreement. In determining intent, clear and unambiguous language will be given its manifest meaning. *Burton v. Douglas County*, 65 Wn.2d 619, 621-22, 399 P.2d 68 (1965). The instrument must be considered in its entirety. Surrounding circumstances are to be taken into consideration when the meaning is doubtful. *Burton*, 65 Wn.2d at 622. Where construction of restrictive covenants is necessitated by a dispute not involving the maker of the covenants, but rather among homeowners in a subdivision governed by the restrictive covenants, rules of strict construction against the grantor or in favor of the free use of land are inapplicable. *Riss v. Angel*, 131 Wn.2d 612, 623, 934 P.2d 669 (1997). The court's goal is to ascertain and give effect to those purposes intended

by the covenants. *Riss*, 131 Wn.2d at 623. Strict construction will not be used to defeat the plain and obvious meaning of a restrictive covenant. *Riss*, 131 Wn.2d at 623.

██ ¶15 The prayer for relief asked the court to enter "a declaratory judgment" as to a number of specific issues:

1. Determining the appropriate method of measurement of the height restriction prescribed in the *Covenants*;

2. Determining that the residence constructed by Bunney on the Bunney Property violates the height restriction set forth in the *Covenants*;

3. Determining that the residence so-constructed by Bunney should be modified to bring it into compliance with the height restriction prescribed [in] the *Covenants*;

4. Determining the enforceability of the rule adopted by the Board of Directors for review of construction plans;

5. Determining that Bunney violated the rule for review of construction plans;

6. Granting judgment in favor of the Plaintiffs for their costs and disbursements incurred herein;

7. Granting judgment in favor of the Plaintiffs and against Bunney for Plaintiffs' reasonable attorney's fees incurred herein; and

8. Granting such other and further relief as the Court deems just and proper.

¶16 We reject as overly technical the argument that a lawsuit cannot be a "suit to enjoin the construction" unless it contains the words "injunction" and "enjoin." In the third item of requested relief, the court was asked to determine "that the residence . . . should be modified." This request was functionally similar to asking for injunctive relief. The purpose of requiring a lawsuit is to make the owner aware that the plaintiffs are serious about enforcing the covenant and that by proceeding to build in violation of the covenant, the owner runs the risk of being ordered by a court to tear down or modify the structure. Here, the complaint fulfilled that purpose. The relief sought and granted, modification of the Bunneys' residence, had the same effect as an injunction.

¶17 Because the lawsuit qualified as a "suit to enjoin the construction," we affirm the denial of the Bunneys' motion for summary judgment.

## PRELITIGATION BAD FAITH AS A BASIS FOR ATTORNEY FEES

¶18 The trial court awarded attorney fees of $74,253.75 to the associations on the basis that the Bunneys acted in bad faith when they built their home knowing they were violating the height restriction. The Bunneys contend the fee award is without legal basis. We agree.

¶19 The standard of review of an award of attorney fees is abuse of discretion. *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 265, 961 P.2d 343 (1998). Attorney fees will not be awarded as part of the cost of litigation in absence of a contract, a statute, or a recognized ground in equity. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 797-98, 557 P.2d 342 (1976). The award in this case was not based on contract or statute. The associations contend it was justified on the equitable ground of prelitigation misconduct, a type of bad faith.

¶20 "CR 11 and our inherent equitable powers authorize the award of attorney fees in cases of bad faith." *Pearsall-Stipek*, 136 Wn.2d at 266-67; *cf. Hall v. Cole*, 412 U.S. 1, 4-5, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973) (same rule in federal courts).

¶21 The associations cite *Hsu Ying Li*, 87 Wn.2d 796, as an example of reliance on inherent equitable powers to justify awarding attorney fees for bad faith. Actually, there was no finding of bad faith in that case. The equitable basis for awarding fees was the nature of the case: dissolution of a partnership for one partner's negligent breach of fiduciary duty tantamount to constructive fraud. The petitioner was awarded one-half of the attorney fees he incurred:

A partner should share the expense of a lawsuit when he breaches his fiduciary duty to the other partners. *See* 68 C.J.S. *Partnership* § 448 (1950). Respondent could have performed his management duties and charged the partnership for any expenses he incurred. This action merely performed respondent's duties, and we therefore approve of the trial court's decision to reimburse petitioner for one-half of the expenses of the lawsuit.

*Hsu Ying Li*, 87 Wn.2d at 799, 801. *Hsu Ying Li* is properly viewed as creating a limited equitable basis for an award of fees in cases with similar facts. It is not an open-ended warrant for the invocation of inherent power to sanction a party for prelitigation misconduct.

¶22 In general, a court may resort to its inherent powers only to protect the judicial branch in the performance of its constitutional duties, when reasonably necessary for the efficient administration of justice. *State v. Wadsworth*, 139 Wn.2d 724, 740-41, 991 P.2d 80 (2000); *In re Salary of Juvenile Dir.*, 87 Wn.2d 232, 245, 552 P.2d 163 (1976); *Cf. State v. S.H.*, 102 Wn. App. 468, 475, 8 P.3d 1058 (2000) (court has inherent power to sanction attorneys for bad faith conduct to achieve the orderly and expeditious disposition of cases where an act, if left unchecked, would encourage future abuses).

¶23 Inherent powers must be exercised with restraint and discretion because they are "shielded from direct democratic controls," and therefore, the inherent power to assess attorney fees exists only in "narrowly defined circumstances." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764-65, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980).

¶24 Prelitigation misconduct is one of three recognized types of bad faith conduct. The second type, bringing a frivolous or harassing claim, is known as substantive bad faith, while the third type, vexatious conduct during the course of litigation, is known as procedural bad faith. *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 927-29, 982 P.2d 131 (1999), *review denied*, 140 Wn.2d 1010 (2000).

¶25 The associations contend the trial court properly. awarded attorney fees for prelitigation misconduct. The term refers to obdurate or obstinate conduct that necessitates legal action to enforce a clearly valid claim or right. Jane P. Mallor, *Punitive Attorneys' Fees for Abuses of the Judicial System*, 61 N.C. L. Rᴇᴠ. 613, 632 (1983), *cited in Rogerson*, 96 Wn. App. at 927-28.

¶26 Prelitigation misconduct may serve as the basis for an award of fees in cases of "enforcement of judicial authority, as where misconduct of a party amounting to contempt of court has caused the opposing party to incur counsel fees, or where a person retains possession of property after a judicial determination of the wrongful character of his possession, thus forcing the party wronged to the expense of further proceedings to recover possession or otherwise enforce his rights." *Guay v. Bhd. Bldg. Ass'n*, 87 N.H. 216, 177 A. 409, 413 (1935) (citation omitted), *quoted in State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 105, 111 P.2d 612 (1941). In such cases, an award of fees is analogous to a remedial fine for civil contempt. *Rogerson*, 96 Wn. App. at 927-28.

¶27 The analogy to contempt is instructive. Prelitigation misconduct, to be sanctionable by an order to pay the other party's attorney fees, necessarily involves some disregard of judicial authority. This is confirmed by examining *Bell v. School Board*, 321 F.2d 494 (4th Cir. 1963), a federal case mentioned in *Rogerson*, 96 Wn. App. at 927-28, and in *Hall*, 412 U.S. at 5. In *Bell*, the prelitigation misconduct was a school board's refusal to desegregate the school. A class of children and their parents were forced to bring suit in order to realize an objective they were already entitled to after decades of litigation and a landmark decision by the nation's highest court. The Fourth Circuit determined that the school board's bad faith compelled an award of attorney fees on equitable grounds:

Here we must take into account the long continued pattern of evasion and obstruction which included not only the defen-

dants' unyielding refusal to take any initiative, thus casting a heavy burden on the children and their parents, but their interposing a variety of administrative obstacles to thwart the valid wishes of the plaintiffs for a desegregated education. To put it plainly, such tactics would in any other context be instantly recognized as discreditable. The equitable remedy would be far from complete, and justice would not be attained, if reasonable counsel fees were not awarded in a case so extreme.

*Bell*, 321 F.2d at 500. The bad faith that called for an award of fees in *Bell* was not the conduct of the litigation, nor was it the mere fact that the school defended against the lawsuit. Rather, it was the discreditable prelitigation tactics the board employed to obstruct the right of the children to a desegregated education, a right that had already been judicially determined.

¶28 Here, the Bunneys did not disregard judicial authority. Their prelitigation bad faith conduct—disregarding the associations' requests for compliance and building a house higher than allowed by the covenant—is the same conduct that served as grounds for the lawsuit. Until the Bunneys lost this lawsuit, there had been no judicial ruling establishing that the homeowners associations were clearly in the right. A litigant has the right to go to court and litigate a nonfrivolous claim or defense. "To allow an award of attorney fees based on bad faith in the act underlying the substantive claim would not be consistent with the rationale behind the American Rule regarding attorney fees." *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1231 (6th Cir. 1984), *cert. denied*, 469 U.S. 1215 (1985).

¶29 The Bunneys argued at trial that the covenants had been abandoned by selective enforcement and that the method of measuring height was unclear. In hindsight, these were not winning arguments. But litigants are not ordinarily required to pay attorney fees for making losing arguments. Significantly, the trial court did not find that the Bunneys' losing arguments were frivolous.

¶30 The associations say this case is unique, but they do not explain how to distinguish it from other cases involving restrictive covenants and homeowners associations. If attorney fees are awardable in this case, where they are not expressly permitted by contract or statute, they would become routine in every case where a property owner has defiantly built a noncompliant structure.

¶31 The Bunneys did not disobey the court or thwart its authority. We conclude the award was not a proper exercise of the inherent power to award attorney fees for bad faith.

¶32 The judgment ordering the Bunneys to modify their home to comply with the height limitation is affirmed. The order of attorney fees is reversed. No attorney fees are awarded on appeal.

LEACH, C.J., and DWYER, J., concur.

Review denied at 175 Wn.2d 1028 (2012).