2015 APR 27 AM 10: 42


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SOCIUS LAW GROUP, PLLC and HECKER, WAKEFIELD, FEILBERG, P.S., | ) ) ) | |
| | ) | No. 71556-9-I |
| Appellants, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| MARK BRITTON and BRIGID CONYBEARE BRITTON, husband and wife, | ) ) ) | UNPUBLISHED OPINION |
| | ) | |
| Respondents. | ) | FILED: April 27, 2015 |

SPEARMAN, C.J. — Attorneys representing Peter and Tamara Musser in this boundary dispute appeal an order imposing sanctions for their alleged discovery abuses, CR 11 violations, improper e-mail communication with the court, and bad faith. We reverse in part and remand in part.

## FACTS

In June 2012, Mark and Brigid Britton filed a complaint against the Mussers for adverse possession of property along their common property boundary. The Brittons subsequently propounded Interrogatories requesting, among other things, the identity of all witnesses and the production of all relevant documents.

No. 71556-9-I/2

In August, 2012, the Mussers' counsel, Socius Law Group and Hecker, Wakefield, and Feilberg (SLG), obtained a statement from the Mussers' long-time gardener and landscaper, Catie Smith. It stated in part:

To Whom It May Concern:

. . . I have managed and maintained the Musser's garden since 2007.

. . .

We have consistently weeded, composted and pruned the plant materials on [the] property boundary [between the Mussers and Brittons]. . . .

Weekly care of the Musser's garden allows for high level of detail throughout their garden. The Brittan's garden is maintained less frequently resulting in a lesser level of detail in their garden by comparison. [We] tended to this property boundary frequently to inhibit the invasive weeds from the Brittan's garden moving into the Musser's side.

. . .

**In July of 2012 when performing a garden walk through, I observed survey stakes that had been installed during a site survey that indicated the property boundary between the Musser's property and the [Brittons'] property. It appeared that the Musser's boundary lines are further into the Brittan's garden than I have been aware of over the course of my years in the Musser's garden.**

I submit my statement to be truthful and to the best of my knowledge.[1]

On November 30, 2012, SLG, on behalf of the Mussers, responded to the Brittons' interrogatories. In response to Interrogatory No. 27, which asked the Mussers to "identify any other person or persons who have relevant information relating to the claims or defenses in this case," SLG replied:

Objection. [Mussers] will not respond to the remaining questions because the requests exceed the discovery limits

---

[1] Clerk's Papers (CP) at 102. (Emphasis added).

- 2 -

imposed by KCLR 26(a)(2)(B). A party may only serve 40 interrogatories, including discrete subparts.[2]

In response to Request for Production No. 19, which sought "any and all documents that relate to in any way the allegations in this case," the Mussers replied:

> Objection. This request is vague and ambiguous. Without a specific request, [the Mussers] cannot respond. . . . Further, this request appears to seek information protected by the attorney client-[sic]privilege and work product doctrines.[3]

The Brittons did not move to compel or otherwise seek a ruling from the court on these objections.

On February 14, 2013, following an e-mail from the Brittons' counsel, SLG reiterated its objection to the interrogatory but nevertheless provided a list of potential witnesses, including Catie Smith. SLG did not mention Smith's 2012 statement. The Brittons subpoenaed Catie Smith's landscaping company, requesting production of relevant records.

On February 22, 2013, SLG filed a motion for summary judgment. The motion, which relied in part on a 2013 declaration from Catie Smith, stated that the Brittons could not establish the exclusivity element of adverse possession:

> [F]atal to the Brittons' claim is the incontrovertible fact that the Mussers, through their landscapers, began using the Disputed Area in a similar manner alleged by the Brittons and the Kleins in August 2007. . . Catie Smith began maintaining the Musser Property at that time. She testified that she and her crew weeded **the entire area**, they pruned the rhododendron, they pruned all sides of the laurel (except the Britton side), they planted bushes (Waxleaf Privets) and plants in the area, they maintained the arborvitae trees and a boxwood, they removed debris, they put down mulch, and

---

[2] CP at 67.

[3] CP at 68.

performed various other tasks . . . Catie Smith's crew was on the Musser Property nearly every week from August 2007 through December 2008. . . . Catie Smith's new company . . . took over, and . . . continues to maintain the property today.

This incontrovertible testimony is fatal to the Brittons' adverse possession claim. From August 2007, through the present, **the Mussers have regularly made the same use of the Disputed Area as alleged by the Brittons**. Such shared use defeats exclusivity.[4]

In their reply brief, the Mussers reiterated that Smith had maintained the "entire area." Reply Br. of Appellant at 11.

On March 18, 2013, only a few days before the hearing on the Mussers' summary judgment motion, the Brittons received documents from Smith, including her 2012 statement to the Mussers. The next day, they moved to supplement the record with Smith's 2012 statement.

On March 20, 2013, SLG sent two e-mails concerning these developments. The first e-mail, which was addressed to the court but not to opposing counsel, stated: "The parties are contemplating continuing the hearing set for Friday. Could you provide what dates Judge Benton would have available in April-May [?]." CP at 166. In a subsequent e-mail addressed to the Brittons' counsel, SLG stated in part:

> Your motion to supplement suggests that you believe that you did not have adequate time to conduct discovery as to Catie Smith. This is the first you mentioned this; no CR 56(f) motion was filed. In any event, we are willing to re'note the motion for a later date. You can supplement the record as you wish, thus obviating the need for your instant motion. With the additional time, we can also work to schedule a deposition of Catie Smith, and possibly Brigid Britton and Erik Wood.

---

[4] CP at 320-21. (Emphasis added)

We are checking with the Court on available dates to renote the motion.[5]

The next day, SLG explained in an e-mail to opposing counsel that Smith's 2012 statement had not been disclosed because it was work product. SLG noted that it had objected to a request for production on that ground.[6]

The court continued the summary judgment hearing to accommodate the judge's leave. The Brittons then informed the court that, contrary to SLG's e-mail to the court, the parties had never discussed a continuance and that SLG's transgressions would be addressed by motion.

On May 10, 2013, the Mussers filed a motion for partial summary judgment and a second declaration of Catie Smith. In the new declaration, Smith addressed suggestions that her first declaration in support of summary judgment was inconsistent with her 2012 statement:

> I strongly disagree with this characterization and I want to ensure that the Court fully understands the context of my earlier statements. . . . I stated in my August 8, 2012 statement that, '[i]t appeared that the Musser's [sic] boundary lines are further into the Brittan's [sic] garden than I have been aware of over the course of my years in the Musser's [sic] garden.' The statement was true then and it is true now. While I have generally maintained the areas described above in the Disputed Area, in just a few sections, I did not perform maintenance right up to the exact border line. In those few locations, such as near the rockery and north of the arborvitae, there may have been as much as a foot that I did not maintain. I also stated in my August 8, 2012 statement that, '[t]here is one English Laurel plant that is on the hillside that over the course of the years it had

---

[5] CP 211.

[6] The e-mail stated in part: "We objected to your RFP No. 19 as vague and ambiguous, in addition to seeking information protected by the attorney-client privilege and work product doctrine. You had our objections in November of 2012 (i.e. almost five months ago). You did nothing about it. We of course assumed that you were in agreement which leads me to the below point." CP at 200.

remained in loose form.' The statement is accurate and completely confirms my above statements.[7]

Unlike the original summary judgment motion, the motion for partial summary judgment alleged that Smith maintained most, but not all, of the disputed area and sought to dismiss only part of the adverse possession claim.

On May 29, 2013, the Brittons filed a motion for sanctions and terms. The motion alleged that SLG violated discovery rules by failing to timely produce Catie Smith's 2012 statement, violated CR 11 by moving for summary judgment with knowledge that Smith's 2012 statement created an issue of fact, and made material misrepresentations in their e-mail to the court. The Mussers denied the allegations and vigorously maintained they had not violated any rules.

In granting the Brittons' motion, the court entered the following findings:

2. The 2013 First Smith Declaration, drafted by [SLG], presented sworn testimony that was materially inconsistent with the declarant's written [2012] statement that was stated to be 'truthful and to the best of my knowledge' . . . [and was] in [SLG's] possession prior to the 2013 First Smith Declaration being submitted to the Court in support of [the Mussers'] Motion for Summary Judgment.

3. Prior to filing the Motion for Summary Judgment based solely on the 2013 First Smith Declaration, [SLG] intentionally resisted Plaintiff's discovery efforts that would have revealed the identity of the witness and the 2012 Smith Statement to the Plaintiffs sooner than they were able to discover it on the eve of the now abandoned summary judgment motion. In connection with those efforts [SLG] failed to identify Ms. Smith as a person with relevant information in this case, despite being in possession of the 2012 Smith Statement.

4. The 2012 Smith Statement directly contradicts her 2013 First Smith Declaration and most likely would have made the Mussers' . . . exclusivity claim impossible to win. The 2012 Smith Statement contradicted the very relief sought by the

---

[7] CP at 625-26.

Motion for Summary Judgment. Additionally, Ms. Smith's identity was withheld until a week before filing the [Mussers'] Motion for Summary Judgment, making it less likely the Plaintiffs or the Court would discover her *2012 Smith Statement* prior to the Court ruling on the Motion for Summary Judgment.

5. Because of the foregoing actions, Plaintiffs incurred significant fees and costs in (a) responding to a Motion for Summary Judgment [and] (b) drafting a Motion to File Supplemental Brief after learning of the subterfuge.

6. [SLG] then made ex parte contact with the Court representing that *the parties* had agreed to continue the Motion for Summary Judgment. In fact, no such agreement was ever even discussed between the counsels or agreed upon. Counsel for Plaintiffs did not learn of the ex parte request for continuance until [SLG] proposed a new hearing date and time to the Court.

7. Rather than continue the original summary judgment motion, and without ever striking that motion, [SLG] filed a new Partial Motion for Summary Judgment.

8. Based on the foregoing, the Court finds that [the Mussers], through [SLG], failed to disclose a known witness and improperly withheld her 2012 Smith Statement because it was against [their] interests. SLG then signed pleadings in connection with the . . . Motion for Summary Judgment knowing that they were not well grounded in fact.

9. The Court further finds that [SLG] engaged in ex parte contact with the Court's staff in an effort to gain a continuance of the initial Summary Judgment Motion immediately following receipt of Plaintiffs' motion to supplement the record with the 2012 Smith Statement where a continuance had not been agreed to by Plaintiffs' counsel. In connection with those efforts, [SLG] made untruthful representations to the Court staff [and], inferentially, the Court.[8]

Based on these findings, the trial court entered the following conclusions of law:

1. By drafting and submitting the 2013 First Smith Declaration that was materially inconsistent with the 2012 Smith Statement that was in counsel's possession, counsel violated CR 11

---

[8] CP 294-96.

by signing a pleading that was not well grounded in fact and that was imposed for an improper purpose.

2. Additionally, counsel violated the King County Superior Court guidelines regarding use of email and ex parte communication by submitting false and misleading information to the Court by untruthful representations, Sec. # 1.9 and failing to include all counsels on the email communications. The actions also violate the attorney's duty of candor to the court as provided for in RPC 3.3.

3. Improper contact and bad faith litigation are subject to sanctions under the inherent power of the Court. This conduct affects the integrity of the court.[9]

The Court imposed $20,989 in sanctions against the Mussers and SLG. The sanctions included $15,796 for attorney fees incurred by the Brittons in responding to the Mussers' motion for summary judgment, and $5,193 for fees incurred in supplementing their response "with the 2012 Smith Statement and emails as well as for the improper and untruthful ex parte communication."[10]

The parties then entered a stipulated order dismissing all claims in the underlying action with prejudice. SLG appeals the order of sanctions.

## DECISION

SLG challenges various findings of fact and conclusions of law relating to the court's award of sanctions. We review factual findings for substantial evidence. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). We review conclusions of law by determining whether they are supported by the findings of fact. Petters v. Williamson & Associates, Inc., 151 Wn. App. 154, 164, 210 P.3d 1048 (2009). A decision to impose sanctions

---

[9] CP at 296.

[10] CP at 297.

under CR 11, the discovery rules, or the court's inherent power is reviewed for abuse of discretion. <u>Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.</u>, 122 Wn.2d 299, 338-339, 858 P.2d 1054 (1993); <u>Saldivar v. Momah</u>, 145 Wn. App. 365, 402, 186 P.3d 1117 (2008).

<u>Discovery Violations</u>

SLG first asserts that the court's conclusion that SLG improperly withheld Smith's identity and 2012 statement during discovery is not supported by the court's findings. [11] We agree.

As noted above, the Brittons propounded an interrogatory and request for production which, absent an objection, required SLG to disclose Catie Smith's identity and 2012 statement. SLG objected on the grounds that the interrogatory exceeded the 40 interrogatory limit in KCLR 26(b)(2)(B), and the request for production sought counsel's work product. The Brittons did not respond to the objections. Nor did they move to compel further answers or seek a discovery order. Instead, they moved for sanctions several months later, arguing that SLG's objections were a "pretext", "evasive," "improper" and sanctionable. CP at 19-20. The trial court, however, made no findings concerning SLG's objections or the Brittons' failure to challenge them. Absent such findings, the court's conclusion that SLG improperly withheld Smiths identity and statement lacks a sufficient factual basis. In addition, the absence of a finding on a material issue is deemed a finding against the party having the burden of proof." <u>Pacesetter Real Estate, Inc. v. Fasules</u>, 53 Wn.App. 463, 475, 767 P.2d 961 (1989). It was the

_____

[11] Although the court's conclusion appears in its findings, we treat a legal conclusion denominated as a finding of fact as a conclusion of law. <u>Sloan v. Horizon Credit Union</u>, 167 Wn. App. 514, 518, 274 P.3d 386, <u>review denied</u>, 174 Wn.2d 1019 (2012).

Brittons' burden to demonstrate grounds for sanctions. The court therefore abused its discretion in awarding sanctions for the alleged improper withholding.

### CR 11 Sanctions for Motion for Summary Judgment

SLG next contends the court abused its discretion in imposing CR 11 sanctions for its filing of the Mussers' first motion for summary judgment. Again, we agree.

CR 11[12] authorizes sanctions for "*baseless* filings" or filings made for an improper purpose. Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219-20, 829 P.2d 1099 (1992). "A filing is 'baseless' when it is '(a) not well grounded in fact, or (b) not warranted by (i) existing law or (ii) a good faith argument for the alteration of existing law.'" MacDonald v. Korum Ford, 80 Wn. App. 877, 883–84, 912 P.2d 1052 (1996) (quoting Hicks v. Edwards, 75 Wn. App. 156, 163, 876 P.2d 953 (1994)). The trial court should impose sanctions only when it is "patently clear that a claim has absolutely no chance of success." Skimming v. Boxer, 119 Wn. App. 748, 755-57, 82 P.3d 707 (2004). The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing legal or factual theories. Bryant, 119 Wn.2d at 219. Accordingly, sanctions should "be reserved for egregious

_____

[12] CR 11(a) provides in pertinent part:

> The signature of a party ... constitutes a certificate ... that the party ... has read the pleading, motion, or legal memorandum, and that to the best of the party's ... knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) **it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose**, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court . . . may impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee. (Emphasis added).

conduct[.]" Biggs v. Vail, 124 Wn.2d 193, 199 n.2, 876 P.2d 448 (1994). In evaluating a CR 11 claim, consideration must be given both to the purpose of deterring baseless claims as well as the potential chilling effect CR 11 may have on those seeking to advance meritorious claims. Bryant, 119 Wn.2d at 219.

Here, the court found that, contrary to SLG's assertions in the motion for summary judgment, Smith's 2012 statement indicated that Smith had not maintained the *entire* disputed area. Because SLG knew about the 2012 statement when it filed the motion for summary judgment, the court found that it signed pleadings "knowing that they were not well grounded in fact." CP at 295. The court concluded that SLG violated CR 11 and imposed sanctions for its filing of the summary judgment motion.

But as SLG correctly points out, any alleged conflict between Smith's 2012 statement and the motion did not render the motion for summary judgment baseless. At most, it precluded summary judgment on a small portion of the disputed area. SLG's claim that the Brittons did not establish exclusive use of the disputed area was otherwise well grounded in fact and law and supported partial summary judgment as to the vast majority of the disputed area.[13] Thus, the court's finding that Smith's 2012 letter "most likely would have made the Mussers' . . . exclusivity claim impossible to win" is not supported by the record. In turn, its conclusion that the motion for summary judgment was not well grounded in fact is not supported by the findings or the record. CP at 261.

---

[13] The motion for summary judgment and supporting declaration identified discrete portions of the disputed area that could have been the basis of an order granting partial summary judgment.

Nor can any impropriety in the motion be characterized as egregious conduct warranting sanctions. While conduct may be egregious and sanctionable when a party's claims are *mostly* frivolous and/or not well grounded in fact or law, see Biggs v. Vail, 124 Wn.2d at 199-202 (court had authority to impose CR 11 sanctions where three of four claims in complaint were frivolous), SLG's motion was mostly nonfrivolous and well-grounded in fact. There was no egregious conduct.

Finally, neither the findings nor the record support the court's alternative conclusion that the motion for summary judgment was filed for an improper purpose. Examples of improper purposes include filings made "to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . ." CR 11(a) Nothing in the court's findings supports its conclusion that SLG's motion for summary judgment was filed for an improper purpose. And, as discussed above, to the extent there was any impropriety, it did not amount to egregious conduct. We vacate the sanctions awarded for the filing of the motion for summary judgment. Because the sanctions for fees the Brittons incurred in their supplemental filings are based on the same conduct addressed in the discovery and CR 11 discussions above, we vacate those sanctions as well.

The Brittons argue in the alternative that the above-mentioned conduct was separately sanctionable under the court's inherent power "independent of any . . . violation of CR 11, RPC 3.3, or the King County Superior Court guidelines [for e-mail contact with the court]." Resp. Br. at 13. This argument is arguably contrary to cases holding that the court's inherent power does not apply where CR 11, CR 37, CR 26, or some other court rule specifically designed to

address the challenged conduct applies. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 688-689, 132 P.3d 115 (2006); Saldivar, 145 Wn. App. at 402-03. In any event, the findings in this case do not support the trial court's invocation of its inherent power.

"In general, a court may resort to its inherent powers only to protect the judicial branch in the performance of its constitutional duties, when reasonably necessary for the efficient administration of justice." Greenbank Beach and Boat Club, Inc. v. Bunney, 168 Wn. App. 517, 525, 280 P.3d 1133 review denied, 175 Wn,2d 1028 (2012) (citing State v. Wadsworth, 139 Wn.2d 724, 740-41, 991 P.2d 90 (2000)). Such powers "must be exercised with restraint and discretion because they are 'shielded from direct democratic controls,' and therefore, the inherent power to assess attorney fees exists only in 'narrowly defined circumstances.'" Greenbank, 168 Wn. App. at 525; Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764-65, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Here, the trial court invoked its inherent power on the ground that SLG's "bad faith litigation" affected "the integrity of the court." Conclusion of Law 3; CP at 296. For the reasons set forth above, any impropriety relating to Smith's 2012 statement and the motion for summary judgment did not rise to the level of bad faith conduct affecting the integrity of the court.

### Sanctions for E-mail Contact With the Court

SLG also challenges the court's finding that its e-mail to the court was "ex parte contact . . . [mis]representing that *the parties* had agreed to continue the

Motion for Summary Judgment."[14] SLG contends its reference to "parties" in the e-mail was a reference to the *moving* parties, i.e. the Mussers, that there was no misrepresentation, and that the e-mail was not ex parte contact.

The trial court's interpretation of the word "parties" in the e-mail is reasonable and supports the court's conclusion that the SLG misrepresented the facts to the court. There are, however, several problems with the court's finding. First, the finding erroneously states that "[c]ounsel for the [Brittons] did not learn of the ex parte request for continuance until [SLG] proposed a new hearing date and time to the Court." CP at 295. The Brittons learned of SLG's inquiry regarding alternative dates at 11:37 a.m. on March 20, 2013. SLG first proposed a new hearing date and time at 1:05 p.m. that same day. Second, contrary to the court's finding, the e-mail implied only that the parties were contemplating a continuance, not that they had agreed to one. While this was still a misrepresentation, it is arguably less serious than the misrepresentation the court found. Because we conclude that some of the court's findings are not supported by the record, and because the $5,193 awarded for this conduct included fees for supplemental filings that we are vacating on appeal, we remand for the court to reconsider and/or recalculate the sanctions for the e-mail contact.

Reversed in part and remanded in part.

WE CONCUR:

_Speam, C.J._

_Becker, J._

_Dwyer, J._

[14] CP at 296.

- 14 -