Hillsborough, }
Jan. 1, 1935. }

J. ABRAHAM GUAY, *Ex'r*

*v.*

BROTHERHOOD BUILDING ASSOCIATION & a.

*Aimé E. Boisvert,* for the plaintiff.

*Wason & Guertin, Emile Lemelin* and *Ernest R. D'Amours,* for the defendants.

PAGE, J. The first exception of the defendants is to the refusal of the master to consider, as an element of damages resulting from the premature foreclosure, the difference between the price at which the property was bid in at the foreclosure sale and the amount then due on the first mortgage lien. They rely upon the general statement (41 C. J. 1036) that when a mortgagee makes a premature or unauthorized sale upon foreclosure he is liable to the mortgagor for the value of the land at the time of sale, less the amount of the prior mortgage debt.

An examination of the American cases cited to sustain that statement discloses the fact that in none of them did the mortgagor, as in this case, elect to have the sale annulled. Instead of that the mortgagor elected to let the sale stand and to sue at law for the damages suffered from the wrongful taking of his equity. In one of them the doctrine of election was distinctly stated. "Plaintiff, by bill in equity, might have had the trustee's sale set aside and thus restored its equity of redemption. But it was not bound to pursue this remedy, for it had a right to maintain its action at law to recover damages for breach of the contract to extend the time of payment, and . . . in its action at law the measure of its damages is the value of its equity in the property. Plaintiff was deprived of this equity by the premature and wrongful sale . . . and nothing short of the money value of that of which it was deprived by the wrongful action of defendant could afford it adequate compensation." *Missouri Real Estate Syndicate* v. *Sims,* 121 Mo. App. 156, 166. To the same intent is another of the cases cited, *Warren* v. *Susman,* 168 N. C. 457.

In the case before us the defendant corporation could have held Mrs. Trudeau to damages measured by the value of the equity of

redemption only by electing to permit her to retain the fruits (or the burdens) of her wrongful taking of its equity. When it elected, instead, to have its equity returned, it waived the right to damages equivalent to the value of the equity. It ought not to be necessary to declare the point that one cannot recover both the thing itself and its value in money.

But the defendants complain that the plaintiff did not recover the property. Literally speaking this may be true. However, the court made a decree annulling the sale by Mrs. Trudeau and ordering the restoration of the property to the corporation, thus giving it precisely all that it had elected to claim. It is true that just before the decree was entered the first mortgagee foreclosed and deprived the defendants of any practical enjoyment of the judicial restoration of the property; but the plaintiff and his testatrix have done nothing to prevent the effective restoration; the act of prevention was by the bank which foreclosed the first mortgage, and that act rested back upon the act of the corporation in giving a mortgage to the bank.

The defendants cite several of our own decisions as authority for the proposition that if property wrongfully taken is not or cannot be restored the party deprived of it may have its value in damages. These cases (*Merrill* v. *Houghton*, 51 N. H. 61; *Chartier* v. *Marshall*, 56 N. H. 478) establish the right of money damages in case of non-restoration only when the lack of power to restore is due to the defendant's own wrong. If Mrs. Trudeau had alienated the property so she could not restore it, she might have been compelled to answer in damages measured by the value of the equity. But the obstacle in the way of the defendants getting the property back was not a conveyance by Mrs. Trudeau but a conveyance the defendant corporation had made by way of mortgage to the bank.

If the defendants have any claim against the plaintiff, it is not upon the principles already discussed. They cannot claim damages of the full value of the equity for a wrongful sale by Mrs. Trudeau, since they elected another remedy. Nor can they claim the value of the equity because of her not restoring them to possession if they failed to get possession because the corporation had given the first mortgage. The only ground upon which they can claim any damages has already been pointed out to them (86 N. H. 344, 347), and what has just been said is no more than an amplification of what was said when these parties were formerly before us.

The master's refusal to consider the difference between $25,000, the worth of the property, and $19,000, the amount of the first lien,

was entirely proper. If we assume the accuracy of those figures and that the difference of $6,000 represents the value of the corporation's equity above the first mortgage on the date of the premature sale by Mrs. Trudeau, the assumption will not profit the defendants. If the sale had not been avoided at the instance of the corporation, it might have followed from the assumption, that Mrs. Trudeau retained in ownership and possession an equity of the defendants worth $6,000, subject to her own claim, so that she would have had to credit that amount on the note given her by the corporation. If then the bank had foreclosed and Mrs. Trudeau had discovered that the assumed equity of $6,000 above the first mortgage had partly or wholly disappeared, it might be that she would have had to stand on her credit and take the loss. But as the defendants chose to get their equity back (and did get it back as far as the court and she could accomplish its restoration), any loss of the equity would have to fall upon them, and they could not shift it to her estate. The reason for a credit of the assumed value of the equity, if it ever could have existed, vanished when the defendants sought and obtained an order of the court restoring the equity to them. They should have noted that the equity was subject to the rights of the first mortgagee. It was so when Mrs. Trudeau took it from the corporation, and the corporation got back from her everything she took except the actual possession of the property.

And it is to be remarked that the plaintiff gave back, if not the actual possession of the premises, at least every right of conditional repossession that went with the equity of redemption with which the parties were dealing. The corporation could have had possession as against both the plaintiff and the bank if they had met their obligation to the bank, and it should be remembered that it was for nonpayment of the corporation's obligation, not Mrs. Trudeau's, that the bank foreclosed and the defendants were not permitted the actual possession of the premises.

So we come to the only point of causation that could justify a recovery of damages, that raised by the fourth exception. It was stated in the former opinion that "unless the foreclosure of the first lien mortgage and the ensuing loss of the mortgagor's title by reason of it resulted from the wrongful possession taken and held by the testatrix, the ground of estoppel that her wrong made performance of the condition impossible is not available." The same causal connection is required to establish damages as to establish estoppel. So, in the former opinion it was said: "Causal relation between the wrong

and the loss must be shown. As to this, the master reported that no evidence of any damage or loss to the mortgagor from the wrong was presented."

The defendants were not precluded from showing upon further hearing that there was a causal connection between the wrong of Mrs. Trudeau and the corporation's inability to care for the first mortgage obligation so as to avoid the foreclosure by the bank, and they have had full opportunity to prove that connection at two subsequent hearings before the master. The only additional evidence that they submitted was testimony that the property, five years after the first mortgage was foreclosed and eight years after the sale by Mrs. Trudeau, rented for $42 a week. From this they argued that the master should find as a fact that if there had been no wrongful sale by Mrs. Trudeau and if she had not excluded the corporation from possession, the income would have been no less. Such a conclusion would have been conjectural. Even assuming that the corporation had remained in possession and had collected $42 a week, it would not conclusively follow that the corporation could or would have avoided the foreclosure of the first mortgage. It was in possession for eight years prior to Mrs. Trudeau's wrong, and during that time it lost heavily.

The burden of proof was upon the defendants to satisfy the master that but for Mrs. Trudeau's wrong the corporation would have been able to retain its equity against the bank. They cannot be said to have sustained this burden merely by showing that after the corporation's disastrous management of the property even with the possibility of their getting the rentals that were collected years later, Mrs. Trudeau deprived the corporation of the use and possession of its only assets, which were the property mortgaged and a note for $755 which she attached. The corporation's unsuccessful use of the assets of which she dispossessed it might lead reasonable men to the conclusion of the master that no causal connection and no damage were proved. This disposes of the first exception, and also of the fourth, which was to the finding of the master that there was no causal connection between the illegal foreclosure and the inability of the corporation to protect itself against the foreclosure of the first mortgage.

The second exception is to the refusal of the master to allow as damages the counsel fees incurred by the defendants in maintaining their rights against the premature foreclosure by the plaintiff's testatrix. It is not enough to say that the foreclosure was wrongful, illegal or tortious. Ordinarily one suffering from such a wrong can-

not recover the counsel fees incurred in resistance of it, but will be limited to the attorney fee allowed by statute to be taxed as costs. The case of *Chartier* v. *Marshall*, 56 N. H. 478, obscure in its facts and with no definite discussion of the principles involved, cannot be regarded as authority to govern the situation here presented, even if it has not in fact been overruled by the later cases.

Counsel fees other than statutory costs have been allowed under certain classifications. They include (1) cases of enforcement of judicial authority, as where misconduct of a party amounting to contempt of court has caused the opposing party to incur counsel fees (*Barber* v. *Company*, 80 N. H. 507, 511, 512), or where a person retains possession of property after a judicial determination of the wrongful character of his possession, thus forcing the party wronged to the expense of further proceedings to recover possession or otherwise enforce his rights (*Fowler* v. *Owen*, 68 N. H. 270; *Manchester* v. *Hodge*, 75 N. H. 502; *Jacques* v. *Company*, 78 N. H. 248). Even in the second proceeding to enforce rights judicially declared in a prior action, the wronged party is not allowed anything for counsel fees in the first litigation. His only right as to counsel fees in the earlier proceeding is to have the statutory costs taxed therein. *Hersey* v. *Hutchins*, 71 N. H. 458.

(2) Counsel fees other than those permitted by statute may be allowed by the court as the price of terms. Thus they may be taxed against the applicant for a new trial in some cases as terms for the granting of the motion. *Watkins* v. *Railroad*, 80 N. H. 468. And a party guilty of misconduct in consequence of which a mistrial is ordered may properly be required to pay counsel fees to the opposing party as the price of another trial. *Moses* v. *Craig*, 77 N. H. 586.

(3) Counsel fees may be allowed as damages in cases where there is contractual liability. Such liability may exist where the contract is to be interpreted as expressly providing for their payment, as in injunction bonds (*Derry Bank* v. *Heath*, 45 N. H. 524; *Solomon* v. *Chesley*, 59 N. H. 24) and in sheriffs' bonds (*Hoitt* v. *Holcomb*, 32 N. H. 185, 211); or it may be implied in some cases of indemnity, as where the party indemnified calls in the indemnitor to defend a suit upon the obligation the latter has agreed to pay (*Fairfield* v. *Day*, 71 N. H. 63). It may also be implied in cases where expenses by one of several interested parties have tended to the common benefit of all and the one may have contribution from the others (*Rollins* v. *Rice*, 59 N. H. 493, 498).

(4) Counsel fees other than statutory costs may also be allowed to

a stakeholder out of the *res*, as (a) in the case of a trustee's petition for instructions (*Rollins* v. *Rice, supra*), (b) in petitions for partition and (c) in bills of interpleader, where the stakeholder may have costs attendant upon his bringing the fund and the question of the rights of adverse claimants into the court for adjudication (*Farley* v. *Blood*, 30 N. H. 354, 374), counsel fees sometimes being allowed as a charge against the fund.

(5) In domestic relations cases the court has some discretionary powers relative to allowing substantial counsel fees. In divorce proceedings the power is limited. The court (a) may allow a wife who is libelee a reasonable sum to prosecute her defence when she appears to have a good defence and is without property, (b) denies such fees to a wife who is libelant pending the proceedings, but (c) may take the expenses of her suit into account, if she is given a divorce, in the award of alimony. *Wallace* v. *Wallace*, 75 N. H. 217. The principle possibly extends to proceedings involving the custody of children.

The case here falls into none of these classes, and if the foregoing analysis is not exhaustive, the counsel fees to which these defendants are entitled seem clearly subject to the statutory regulation and not distinct therefrom upon any principle heretofore recognized. The master's ruling was correct.

The third assignment in the bill of exceptions is double: (1) to the finding that the defendants acted jointly in all court proceedings as contrary to the court records, which are alleged to show that they had different counsel; and (2) to the ruling that the taxable costs should be allowed jointly and not separately. The ruling could not be passed upon favorably to the defendants unless it appeared that the finding of fact upon which it was based was not sustainable upon all the evidence. The defendants have left us helpless in this regard by not having the evidence transferred. They can take nothing by either branch of this exception.

*Exceptions overruled.*

All concurred.