**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**


The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 31, 2023

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 31, 2023

*Erin L. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| DALTON M, LLC, a Washington limited liability corporation, | No. 101149-1 |
| Respondent, | |
| v. | EN BANC |
| NORTH CASCADE TRUSTEE SERVICES, INC.; U.S. BANK NATIONAL ASSOCIATION, as Trustee; and DOES 1 through 10, inclusive, | Filed: August 31, 2023 |
| Petitioner. | |

GORDON MCCLOUD, J.—U.S. Bank National Association foreclosed on property owned by real estate company Dalton M, LLC. Unfortunately, the bank did not have the right to do that: Dalton M actually owned the property outright, not subject to any lien.

Dalton M ended up suing U.S. Bank to quiet title and for damages for slander of title. Dalton M prevailed at trial on both of those claims. The trial court also awarded substantial fees to Dalton M based on the slander of title claim.

But Dalton M's victory on the slander of title claim (and the fee award that it carried) was short lived. The Court of Appeals reversed on that claim, holding that

No. 101149-1

Dalton M had failed to prove its "pending sale" element. *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 20 Wn. App. 2d 914, 504 P.3d 834 (2022). That wiped out the sole basis for the trial court's fee award.

The Court of Appeals, however, then sua sponte requested briefing on how else it could award attorney fees to Dalton M. After receiving that briefing, the Court of Appeals awarded fees to Dalton M on an entirely new theory that no party had pleaded or argued to the trial court and that the trial court had never considered: the theory that U.S. Bank had engaged in extensive *pre*litigation bad faith conduct not amounting to violation or contempt of any court order or ruling, and that this provided a new equitable exception to Washington's general rule that each party must bear their own costs of suit.

This decision violates both the Rules of Appellate Procedure (RAPs) and our controlling precedent. Under both sources of law, an appellate court may raise a new issue sua sponte if it is necessary to resolve the questions presented; an appellate court may not raise a new issue sua sponte if it is separate and distinct from the questions presented and unnecessary to resolve those questions— especially when the new "issue" is more like a whole new unpleaded claim depending on factual allegations that were never presented in or proved to the trial court. *Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 177 Wn.2d 136, 146, 298 P.3d 704 (2013); RAP 12.1. The Court of Appeals violated these rules: it

2

No. 101149-1

sua sponte raised a new issue that is more like an unpleaded claim, that new issue was distinct from issues or theories raised before, resolution of that new issue was not necessary to resolve the questions presented about the claims actually pleaded, and resolution of that new issue depended on facts that the parties never had a chance to develop at trial.

We therefore reverse the Court of Appeals' award of attorney fees.

FACTS

In 2006, James and Angela Fleck executed a note and a deed of trust to obtain a loan from GreenPoint Mortgage. The loan was secured by two adjoining parcels of land in Spokane County. Clerk's Papers (CP) at 765-75 (findings of fact (FF) I-II). The deed of trust contains a combined legal description of the two parcels but refers to them separately as Parcel 26071-9008 (Parcel 9008) and Parcel 26071.0402 (Parcel 0402). Ex. 101, at 3. The deed of trust identified a common property address for both parcels. *Id.*

Parcel 9008 had a home on it, while Parcel 0402 remained unimproved. CP at 766 (FF V-VI). Parcel 0402 contains .31 acres on the Spokane River. Verbatim Rep. of Proc. (VRP) (Dec. 17, 2019) at 92. It has no road access; it can be accessed only by water or by crossing Parcel 9008. CP at 287 (Decl. of Laura Coughlin).

By 2011, James Fleck had become delinquent on his property taxes on Parcel 0402. CP at 766 (FF IX). The Spokane County Treasurer's Office initiated a

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101149-1

tax foreclosure and held a public tax foreclosure sale on Parcel 0402. *Id.* (FF X).

At that sale in December 2011, Mark Faulkes and his wife purchased Parcel 0402

for $9,100. *Id.* (FF XII). It is undisputed that the tax sale stripped the lien on Parcel

0402, resulting in GreenPoint Mortgage losing its security interest in Parcel 0402.

*Id.* at 767 (FF XIX); CP at 875 (Joint Rep. at 7, ¶ D(6)).

In January 2012, a tax deed was recorded with the Spokane County

Auditor's Office, conveying Parcel 0402 to the Faulkes. The same day, a real

estate excise tax affidavit was filed with the Spokane County Treasurer's Office,

listing the Faulkes as the grantees of Parcel 0402. In December 2013, the Faulkes

conveyed Parcel 0402 via quitclaim deed to Dalton M, a real estate investment

company owned by Mark Faulkes. CP at 767 (FF XXI).

In August 2012, however, GreenPoint Mortgage filed an assignment of the

Fleck deed of trust with the Spokane County Auditor's Office. The assignment

purported to assign GreenPoint's security interest in both Parcels 9008 and 0402 to

U.S. Bank National Trust—even though the tax sale had stripped GreenPoint of its

lien as to Parcel 0402. *Id.* (FF XIX).

By 2014, James Fleck had defaulted on his mortgage loan. U.S. Bank's loan

servicer, Ocwen Loan Servicing, referred the loan to the trustee to initiate a

nonjudicial foreclosure. *Id.* (FF XXII). The foreclosure was delayed for at least a

year when an error in the named assignee was discovered on the deed of trust. VRP

4

No. 101149-1

(Dec. 17, 2019) at 138; CP at 767 (FF XXIII), 769 (FF XXXIX). By the time the mistake was corrected, U.S. Bank had appointed North Cascade Title Services as successor trustee; Ocwen remained its servicer. CP at 769 (FF XLI).

Between 2014 and 2016, Ocwen obtained several sets of parcel maps and information for Parcels 9008 and 0402 from the Spokane County Assessor's Office, showing James Fleck as the owner of Parcel 9008 and Dalton M, as the owner of Parcel 0402. Ocwen also received several title reports from Chicago Title Insurance, indicating that James Fleck and Dalton M had an interest in the two parcels. The documents showed a separate mailing address for Dalton M. Ocwen forwarded each set of documents to its attorney, Robinson Tait. *Id.* at 768 (FF XXVII, XXX).

In February 2016, foreclosure proceedings resumed, and North Cascade mailed a notice of default to James Fleck, Angela Fleck, Dalton M, and "current occupant," all sent to the parcels' shared address. *Id.* at 769 (FF XLIII).

On March 30, 2016, North Cascade recorded a notice of trustee's sale with the auditor's office; it stated that Parcels 9008 and 0402 were to be sold at public auction on August 12, 2016. *Id.* at 770 (FF XLIX). The notice listed North Cascade Trustee Services as the trustee and was mailed to the Flecks, Dalton M, and "current occupant," all at the same address. *Id.* No notice was mailed to Dalton

5

No. 101149-1

M's registered mailing address or served on Dalton M's agent. VRP (Dec. 17, 2019) at 73. Mark Faulkes never received notice of the auction. *Id.* at 71.

The trustee held the auction on August 12, 2016, and U.S. Bank placed the winning bid. On September 15, 2016, North Cascade recorded a trustee's deed conveying Parcel 9008 and Parcel 0402 to U.S. Bank. The same day, North Cascade filed a real estate tax affidavit referring to both parcels with the Spokane County Treasurer's Office, listing itself as grantor, U.S. Bank as grantee, and a sale price of $300,000. CP at 770 (FF LVII). Thereafter, the treasurer's office listed U.S. Bank as the owner of both parcels. *Id.* at 770-71 (FF LV, LX, LXII).

Dalton M's president, Mark Faulkes, did not become aware that U.S. Bank was listed as the owner of Parcel 0402 until late 2016 or early 2017. *Id.* at 770 (FF LIV, LVIII). He first communicated with North Cascade Trustee Services about the issue in February 2017. *See* Ex. 106 (Request for Production (RFP) No. 1) (e-mails). North Cascade told Faulkes that the matter had been "escalated" with the loan servicer, but apparently no resolution was reached. *Id*. Faulkes next contacted Robinson Tait, the law firm that represented North Cascade, in an attempt to have the title corrected. *Id.*; CP at 770 (FF LIX). In March 2017, a Robinson Tait attorney told Faulkes that the matter had been submitted to the title company to resolve. Ex. 106 (RFP No. 1) (e-mails). In May, a Robinson Tait attorney told Faulkes they were working on transferring title back to Faulkes but had

6

No. 101149-1

encountered issues with the legal description of the property. *Id.* The attorney

stated that the title company recommended hiring a surveyor to create an accurate

legal description of the property boundaries. *Id.* Neither party ever hired a

surveyor.

In August 2017, Faulkes offered to sell Parcel 0402 to U.S. Bank for

$300,000. *Id.* (e-mails between Faulkes and Robinson Tait). He then offered to buy

the bank's adjacent parcel, 9008. *Id.* Nothing came of these offers.

In February 2018, Dalton M sued U.S. Bank. The complaint pleaded three

claims against U.S. Bank: quiet title, slander of title, and unjust enrichment. CP at

7-9.[1] Dalton M sought damages "as a consequence of slander of title," and it also

sought "costs and attorney's fees incurred in this matter." *Id.* at 10.

In its answer, U.S. Bank opposed all the relief sought by the complaint. *Id.* at

15.[2] Before trial, however, U.S. Bank conceded on several occasions that it had no

ownership interest in Parcel 0402. *Id.* at 61, 141-42, 875. The parties even

stipulated that the deed of trust should be reformed to reflect Dalton M's

---

[1] The complaint also named North Cascade Trustee Services as a defendant. CP at
5. The complaint alleged an additional cause of action against North Cascade only, for
violations of the Consumer Protection Act, ch. 19.86 RCW. *Id.* at 9. Soon after the
complaint was filed, North Cascade filed for bankruptcy, staying the claims against it.
*See* Suppl. Br. of Resp't at 5 & n.2; CP at 628. The parties do not address the status of the
claims against North Cascade. The trial court found that Dalton M had failed to plead a
violation of the CPA claim against U.S. Bank. CP at 771 (FF LXV).

[2] It also asserted the affirmative defense of easement implied by prior use to access
a septic system on Parcel 0402. *Id.* at 16, 869.

No. 101149-1

ownership. *Id.* at 875 (Joint Rep. D(5)-(7)). So the focus of the trial was the slander of title claim, not the quiet title claim.

PROCEDURAL HISTORY

I.      Trial court rules in favor of Dalton M on quiet title and slander of title claims and awards attorney fees and costs related to slander of title

At the bench trial in December 2019, Mark Faulkes testified that he has been a real estate investor in the Spokane area for the past 30 years. VRP (Dec. 17, 2019) at 61-62. He has purchased both improved and unimproved properties and manages at least 150 residential units. *Id.* at 62. He chose to purchase Parcel 0402 for a low price at the tax sale because he estimated its true value at $50,000 to $100,000. *Id.* at 63. Following his purchase, he did not have a full legal description of Parcel 0402. *Id.* at 115-16. Although Robinson Tait asked Faulkes to hire a surveyor to obtain a complete legal description of Parcel 0402, he declined to do so. *Id.* at 110, 115, 118.

A senior loan analyst at Ocwen Loan Servicing testified that neither Ocwen nor U.S. Bank were aware at any time prior to the foreclosure that Parcel 0402 had been sold at a tax sale and, hence, was no longer encumbered by any lien. *Id.* at 137, 140. Ocwen's records did not show any information relating to the tax sale. *Id.* at 137; VRP (Dec. 18, 2019) at 218, 219-20, 224, 263-64. Although the parcel maps and title reports showed that Dalton M owned Parcel 0402, the Ocwen analyst explained that a change in ownership of property is not uncommon and,

8

No. 101149-1

without more, does not lead to the conclusion that a tax sale occurred or that a lien has been stripped. *Id.* at 271-72. Ocwen became aware that a tax sale had occurred only after the foreclosure sale was completed. VRP (Dec. 17, 2019) at 143. The analyst's unchallenged testimony established that if Ocwen had been aware of the tax sale, it would not have referred Parcel 0402 for foreclosure. *Id.* at 140.

At the close of trial, Dalton M essentially abandoned its unjust enrichment claim. VRP (Dec. 18, 2019) at 302-03. U.S. Bank reiterated its agreement that Dalton M owned Parcel 0402, but it maintained that title should be corrected through a reformation of the deed. VRP (Jan. 10, 2020) at 327. Although Dalton M had stipulated to a reformation of the deed pretrial, by the close of trial it disagreed that such a remedy was available. *Compare* CP at 875 (Joint Rep. D(7)), *with* VRP (Dec. 18, 2019) at 313.

The trial court entered judgment for U.S. Bank on Dalton M's claim for unjust enrichment. CP at 773 (conclusions of law (CL) XXIII).

With respect to the quiet title claim, the trial court concluded that Dalton M owned Parcel 0402. It therefore entered judgment in favor of Dalton M on that claim. But it ruled that because quiet title sounds in equity, it could not award damages on that claim. It also declined to grant U.S. Bank's request for reformation of the deed of trust. *Id.* at 771-73.

No. 101149-1

Finally, the trial court entered judgment in favor of Dalton M on its slander of title claim. *Id.* at 773 (CL XXI). To prove slander of title, the plaintiff must prove by a preponderance of evidence "false words; maliciously published; with reference to some pending sale or purchase of property; which go to defeat plaintiff's title; and result in plaintiff's pecuniary loss." *Id.* at 772 (CL IX); *see also Rorvig v. Douglas*, 123 Wn.2d 854, 859, 873 P.2d 492 (1994). Relevant here, the court concluded that U.S. Bank published false words when it recorded the trustee's deed that transferred title to Parcel 0402 into U.S. Bank's name. CP at 772 (CL XIII). The court concluded that "U.S. Bank's claim of ownership was made in bad faith as the evidence shows U.S. Bank has been aware of Dalton M's interest in Parcel 0402 since at least 2014." *Id.* (CL XI). It concluded, "The element of malice is met as the slanderous statement was not made in good faith, nor was it prompted by a reasonable belief in its veracity." *Id.* (CL XIV). Finally, the trial court concluded that "U.S. Bank's false assertion of ownership was premised on [its] purchase of the property, thus satisfying the pending purchase or sale element." *Id.* at 773 (CL XV). The trial court also ruled, "Due to this Court's finding, relative to the Slander of Title claim, the Court awards Dalton M its reasonable attorney's fees and costs associated with trying to restore title." *Id.* (CL XXII).

No. 101149-1

Dalton M moved for $82,086.26 in fees and costs, and U.S. Bank opposed. *Id.* at 778-79. The trial court entered final judgment and an order granting Dalton M attorney fees and costs in the amount of $81,673.98. *Id.* at 844.

II. Court of Appeals reverses slander of title judgment but affirms trial court's award of attorney fees on a different ground: an equitable basis that no party argued at trial or raised on appeal

U.S. Bank appealed. Relevant here, it argued that the trial court erred in concluding that Dalton M established the "malicious publication" and "reference to some pending sale or purchase of property" elements of slander of title. The bank also argued that the trial court erred in "awarding attorneys' fees as special damages where the fees were not specifically plead [sic] and where there was no evidence of other damages, and whether the trial court awarded an appropriate amount of fees given the evidence that Plaintiff succeeded on only one claim entitling him to attorneys' fees, out of four claims litigated, and given other evidence of unreasonableness." Opening Br. of Appellant U.S. Bank as Tr., *(*Wash. Ct. App., No. 37448-3-III, at 8 (2020)).

Following initial briefing, the Court of Appeals sua sponte asked the parties to brief additional issues:

1. Whether Dalton M should be awarded reasonable attorney fees and costs on equitable grounds if this court affirms the trial court's finding that U.S. Bank engaged in bad faith conduct and regardless of whether this court affirms the granting of judgment in favor of Dalton M on its slander of title action?

11

No. 101149-1

　　2. Whether Dalton M should be awarded reasonable attorney fees and costs on equitable grounds for any other reason?

Letter from Ct. Clerk Tristen Worthen to Counsel, *Dalton M*, No. 37448-3-III (Nov. 8, 2021). Each party submitted supplemental briefing addressing the questions.

　　The Court of Appeals reversed the trial court's judgment on the slander of title claim.　It ruled that U.S. Bank's recording of the deed of trust did not meet the "'reference to some pending sale or purchase of property'" element of the slander of title claim. *Dalton M, LLC, v. N. Cascade Tr. Servs.*, 20 Wn. App. 2d 914, 934, 504 P.3d 834 (2022).

　　The appellate court acknowledged that because it reversed the slander of title claim, it could neither affirm the trial court's award of attorney fees nor enter its own award of attorney fees based on that claim. *Id.* at 940. But it held that "fees can be awarded for the prelitigation bad faith of a party that entails a refusal to honor a valid claim, thereby forcing the plaintiff to file suit to rectify a problem." *Id.* at 918. That court seemed to characterize this as an issue of first impression but also as an application of an established exception to the so-called "American rule" on attorney fees, under which a prevailing party is usually not entitled to attorney fees. *Compare id.*, *with id.* at 941. The appellate court acknowledged that the trial court had not found that U.S. Bank had engaged in prelitigation bad faith conduct

12

No. 101149-1

apart from the trial court's finding regarding the single malicious publication element of slander of title. Nevertheless, the appellate court held that it could "imply" facts not actually found by the trial court to support its conclusion that U.S. Bank acted in bad faith both "before foreclosing on Parcel 0402 and after being contacted by Mark Faulkes." *Id.* at 943. As a result, the appellate court awarded "those fees attendant to the bad faith, which includes the fees attendant to clearing title and fees incurred to establish the bad faith denial of the claim of U.S. Bank," and remanded to the trial court to determine the amount of those fees. *Id.* at 961. U.S. Bank moved for reconsideration, which the Court of Appeals denied.

III.     Review in this court

U.S. Bank petitioned for review, raising three issues. First, it argued that the *Dalton M* decision's discussion of the "malicious publication" element of slander of title conflicted with the standard articulated by this court in *Rorvig*, 123 Wn.2d at 854. Pet. for Rev. at 15. Second, U.S. Bank argued that the Court of Appeals' decision to award attorney fees to Dalton M "on a novel theory not advanced by the plaintiff, and premised on factual findings never tried to or determined by the trial court," raises RAP and due process concerns and conflicts with this court's decision in *Clark County*, 177 Wn.2d at 146-47. *Id.* at 18-19. Third, U.S. Bank argued that *Dalton M* conflicts with precedent regarding the limited circumstances under which Washington courts may grant attorney fees and costs for prelitigation

13

No. 101149-1

bad faith conduct. *Id.* at 23-25 (citing *Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d 392, 438, 423 P.3d 392 (2018);[3] *Greenbank Beach & Boat Club, Inc. v. Bunney*, 168 Wn. App. 517, 526, 280 P.3d 1133 (2012)).

Dalton M filed an answer arguing against review and did not raise any cross claims. We granted review of all issues raised in U.S. Bank's petition. Ord. Granting Rev., *Dalton M, LLC, v. N. Cascade Tr. Servs.*, No. 101149-1 (Wash. Dec. 7, 2022).

ANALYSIS

I.      The Court of Appeals erred in awarding attorney fees and costs to Dalton M based on a new factually based theory that the appellate court raised sua sponte

U.S. Bank argues that it was deprived of due process and subject to unfair surprise when the Court of Appeals based its attorney fee award on a novel equitable theory that was never litigated or even raised at trial and that no party raised on appeal. Pet. for Rev. at 18-20. Dalton counters that the RAPs permit the appellate court to raise issues sua sponte and that the issue of U.S. Bank's bad faith was litigated below. Resp't's Answer to Appellant's Pet. for Rev. at 14-15.

The court's power to award attorney fees on an equitable basis stems from the inherent power of the court. *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255,

---

[3] *Abrogated on other grounds by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019).

14

No. 101149-1

267 n.6, 961 P.2d 343 (1998) (citing *Pub. Util. Dist. No. 1 of Snohomish County v. Kottsick*, 86 Wn.2d 388, 389, 545 P.2d 1 (1976)). In the context of attorney fees based on a party's bad faith conduct, the United States Supreme Court has made clear that "[a] court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980)).

Due process requires a defendant "to be advised, by the pleadings, of the issues he must be prepared to meet at the trial." *Vogreg v. Shepard Ambulance Serv. Inc.*, 47 Wn.2d 659, 663, 289 P.2d 350 (1955). That includes the issue of attorney fees. *Kathryn Learner Fam. Tr. v. Wilson*, 183 Wn. App. 494, 498-99, 333 P.3d 552 (2014). Recovery of attorney fees is the exception, not the rule, in Washington. *Cosmo. Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 296, 149 P.3d 666 (2006). The requirement that a party plead attorney fees "provides the opposing party not only with a 'meaningful opportunity to meet the merits of the pleader's claim, but also a chance to make an informed decision to undergo the risks of litigation.'" *Kathryn Learner Fam. Tr.*, 183 Wn. App. at 499 (quoting the record).

15

No. 101149-1

Washington courts generally follow the rule of party presentation, under which appellate courts "'normally decide only questions presented by the parties.'" *Greenlaw v. United States*, 554 U.S. 237, 244, 128 S. Ct. 2559, 171 L. Ed. 2d 399 (2008) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in the denial of rehearing en banc); *see also* RAP 10.3(g) ("The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto."), RAP 5.3, RAP 10.3. "That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw*, 554 U.S. at 243. Thus, "[t]he scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties." *Clark County*, 177 Wn.2d at 144. "The court must address only those claims and issues necessary to properly resolving the case as raised on appeal by interested parties." *Id.* at 145. Under our RAPs and case law, appellate courts may in some instances raise and decide new issues that are necessary to resolve the case. Specifically, RAP 12.1 provides that "the appellate court will decide a case only on the basis of issues set forth by the parties in their briefs," unless the court decides that an unbriefed issue "should be considered to properly decide a case" and gives the parties an opportunity to brief the issue.

16

No. 101149-1

But the court's discretion to raise new issues is not unlimited. It is "our settled policy" that "an appellate court must not adjudicate resolved, separate and distinct claims that are not raised by any party on appeal." *Clark County*, 177 Wn.2d at 146. *Clark County* is instructive on this point. There, the plaintiffs challenged a county ordinance changing the designation of certain lands to "urban growth areas." *Id.* at 140. State law bars cities from annexing territory outside of an urban growth area and imposes requirements on land to be so designated. *Id.* After the ordinance redesignated the lands, two cities annexed those lands. However, no party to the litigation regarding the ordinance challenged the cities' annexation of the lands. In fact, the plaintiffs entered into a stipulation with an intervenor confirming that they did not challenge that annexation's validity. The superior court entered an order "resolv[ing] . . . claims related to the [a]nnexed [l]ands." *Id.* at 141. And no one appealed that stipulation and resolution.

On appeal, though, the Court of Appeals sua sponte decided to consider the propriety of the cities' annexation of the lands, even though no party had raised or litigated it in the proceedings below or on appeal. *Id.* at 141-42.

We vacated the portion of the Court of Appeals' decision addressing that annexation issue. *Id.* at 148. We determined that claims regarding the propriety of the annexation were "separate and distinct claims" from the claims actually raised by the parties on appeal. *Id.* Further, we determined that any claims regarding the

17

No. 101149-1

propriety of the annexation had already been "resolved below." *Id.* at 139. We held that "[t]he Court of Appeals erred by adjudicating claims that were resolved below, were not raised on appeal, and remained separate and distinct from the claims that the parties raised on appeal." *Id.* at 143. We reasoned that "such extraneous claims need not be adjudicated in order to properly decide a case on appeal, and such judicial action needlessly disturbs resolved matters, wastes judicial resources, creates unfair surprise . . . and risks insufficient advocacy on review." *Id.* at 147.

Here, U.S. Bank explains that Dalton M never raised a claim for attorney fees based on the equitable ground of prelitigation bad faith conduct. U.S. Bank continues that since Dalton M never pleaded such a claim in the trial court, the bank had no opportunity to present evidence to rebut the appellate court's charge that it engaged in prelitigation bad faith conduct.

In response, Dalton M argues that this court "'ha[s] repeatedly held that RAP 12.1(b) means exactly what it says: this court may raise issues sua sponte and may rest its decision thereon.'" Suppl. Br. of Resp't Dalton M, LLC at 13 (emphasis added) (alteration in original) (quoting *Greengo v. Pub. Emps. Mut. Ins. Co.*, 135 Wn.2d 799, 813, 959 P.2d 657 (1998) (plurality opinion)). But *Greengo*'s reasoning does not support Dalton M's position. In *Greengo*, this court had to construe language in an insurance policy to determine whether an injured driver was entitled to coverage. We determined that resolution of the issue required

18

No. 101149-1

determining whether one or two car accidents had occurred. *Greengo*, 135 Wn.2d at 805. As quoted above, we noted that RAP 12.1(b) authorized this court to raise that new issue. But in *Greengo*, the issue of how many accidents occurred was closely linked to the questions presented and the insurance policy's language—it was not a brand-new claim or theory of recovery. *Compare id.* at 803-06, *with Clark County*, 177 Wn.2d at 147. By contrast, the Court of Appeals in this case raised, adjudicated, and decided in Dalton M's favor an entirely new theory of recovery that no party had raised below.

Injection of a brand-new issue that is akin to an unpleaded claim at the appellate level creates problems for a reviewing court because the record will likely lack factual development related to that new issue. That is what happened here: to decide the merits of this new theory of recovery that the appellate court raised, that court also had to raise new issues—issues that required factual development that had not occurred at the trial.

As a rule, an appellate court "generally cannot make findings of fact, and will not endeavor to do so based on an incomplete record in which neither party properly briefed or argued" the elements of a claim. *Garcia v. Henley*, 190 Wn.2d 539, 544, 415 P.3d 241 (2018). The Court of Appeals in this case, however, essentially conducted its own fact-finding by "implying" factual findings that the trial court did not make. *Dalton M*, 20 Wn. App. 2d at 961.

No. 101149-1

Dalton M is certainly correct that the parties vigorously litigated the "malicious publication" element of slander of title in the trial court. But that element was specifically related to whether U.S. Bank's single act of "publication" of the deed of trust was made with malice or in bad faith. Pet. for Rev. at 10; Suppl. Br. of Resp't Dalton M, LLC at 15. The trial court made several findings of fact and conclusions of law specifically related to this element of slander of title. *See supra* pp. 8-11. It also made a few findings of fact relating to U.S. Bank's conduct following the recording of the deed. *See* CP at 770-71 (FF LVIII, LIX, LXI). But it never found or concluded that U.S. Bank engaged in any bad faith conduct following the recording of the deed and prior to litigation.

Nonetheless, the Court of Appeals explicitly based its attorney fee award on the conduct of U.S. Bank *following* the recording of the deed:

> The superior court found U.S. Bank to have engaged in bad faith when filing the trustee's deed. The superior court did not expressly find that the bank engaged in bad faith when refusing to lift the cloud on Dalton M's title before suit *but this bad faith inevitably followed from the original bad faith*. The evidence of bad faith *after contact* from Mark Faulkes is overwhelming, if not undisputed.

*Dalton M*, 20 Wn. App. 2d at 961 (emphasis added).

The Court of Appeals relied on two intermediate appellate court decisions from other states to hold that it was entitled to "base its decision on findings of fact [inferred] from other findings and the underlying facts." *Id.* (citing *Pistol Res.,*

20

No. 101149-1

*LLC v. McNeely*, 312 Or. App. 627, 629, 496 P.3d 28 (2021); *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 133 (Tex. App. 2020)).

The Court of Appeals' decision to infer findings of fact here conflicts with controlling precedent from this court—especially since the facts it inferred do not "inevitably follow[]" from the trial court's actual findings. *Id.* As stated above, appellate courts are not fact-finders. *Garcia*, 190 Wn.2d at 544. Even when an appellate court properly raises a new, related issue, the court should remand to the trial court for fact-finding if the record is not fully developed on that issue. *See Greengo*, 135 Wn.2d at 815-16. As to implied or inferred facts, we have held that an appellate court may imply or infer the existence of a finding of fact "if—but only if—all the facts and circumstances in the record . . . clearly demonstrate that the omitted finding was *actually intended, and thus made*, by the trial court." *In re Welfare of A.B.*, 168 Wn.2d 908, 921, 232 P.3d 1104 (2010) (emphasis added).

Based on the record in this case, there are at least two plausible accounts of what happened pretrial. One possible account is reflected in the Court of Appeals' decision—U.S. Bank engaged in bad faith, dilatory conduct and refused to correct a mistake it should have prevented from ever occurring at all. But equally plausible, based on the record in this case, is that the bank's errors were unintentional and U.S. Bank failed to resolve the problem before trial because the

21

No. 101149-1

legal description in Parcel 0402's deed was so confusing. On this account, while

U.S. Bank and its agents may have been negligent, they did not act in bad faith.

But neither of these accounts "inevitably followed," *Dalton M*, 20 Wn. App.

2d at 961, from the trial court's ruling—because the trial court did not make any

factual findings at all about U.S. Bank's post-malicious-publication, pretrial

conduct. For that reason, we cannot conclude that an omitted finding regarding

months of alleged prelitigation bad faith conduct "was actually intended, and thus

made, by the trial court." *A.B.*, 168 Wn.2d at 921.  U.S. Bank was entitled to notice

and the opportunity to respond to such a claim in front of the trier of fact. *Vogreg*,

47 Wn.2d at 663.

Dalton M cites cases arising in the sanctions context, arguing that "[a]n

appellate court may still uphold a sanction 'where an examination of the record

establishes that the court found some conduct equivalent to bad faith,'" even if the

court made no explicit finding of bad faith. *State v. Numrich*, 197 Wn.2d 1, 27, 480

P.3d 376 (2021) (quoting *State v. Gassman*, 175 Wn.2d 208, 211, 283 P.3d 1113

(2012)).[4] But even under these cases, the appellate court cannot affirm a sanction

---

[4] *Numrich* and *Gassman* are also distinguishable because they relate to sanctions for bad faith conduct *during* litigation—in other words, bad faith that the trial court itself observed at a point when the trial court already had jurisdiction over the parties. *See Numrich*, 197 Wn.2d at 28 (holding trial court did not err in awarding sanctions in the amount of attorney fees against the State for State's bad faith conduct in late-filing an amended information); *Gassman*, 175 Wn.2d at 213 (holding trial court erred in awarding

No. 101149-1

unless the record shows bad faith conduct *related* to the conduct for which the party was sanctioned. *See Numrich*, 197 Wn.2d at 28. Here, there is no finding of bad faith related to U.S. Bank's conduct following the recording of the deed of trust. Moreover, in cases specifically discussing attorney fee awards for prelitigation bad faith conduct (as opposed to sanctions), we have required the trial court to make an explicit finding of bad faith in order to affirm. *Pearsall-Stipek*, 136 Wn.2d at 267; *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 798, 557 P.2d 342 (1976).

In sum, U.S. Bank has the better of this argument. The question of Dalton M's entitlement to attorney fees on the equitable basis of U.S. Bank's prelitigation bad faith conduct was a completely new, fact-dependent theory of recovery that had not been litigated below. In determining that U.S. Bank engaged in pretrial bad faith conduct beyond the trial court's findings, the Court of Appeals improperly engaged in its own fact-finding. It thereby deprived U.S. Bank of notice or the opportunity to present a defense to any allegation that it engaged in pretrial bad faith conduct.

---

sanction in the amount of attorney fees against the State for "careless" but not bad faith conduct).

23

No. 101149-1

II.    Prelitigation bad faith conduct is not a recognized ground in equity supporting fee-shifting in this case

Our decision today is based on the Court of Appeals' error in raising a new, distinct, previously unlitigated theory of recovery that no party raised and engaging in its own fact-finding to decide that issue. But even if we look at the substance of that new theory, it fails:  there is no recognized basis for an equitable award of attorney fees and costs based on this record.

Washington follows the American rule on attorney fees, meaning that recovery of attorney fees in a civil action is the exception, not the rule. *Cosmo. Eng'g Grp., Inc.*, 159 Wn.2d at 296. Attorney fees "are not available as costs or damages absent a contract, statute, or recognized ground in equity." *City of Seattle v. McCready*, 131 Wn.2d 266, 275, 931 P.2d 156 (1997) (emphasis omitted); *LK Operating, LLC v. Collection Grp., LLC*, 181 Wn.2d 117, 123, 330 P.3d 190 (2014); *Numrich*, 197 Wn.2d at 32. No statute or contract applies here. Thus, if there were any basis for attorney fees in this case, they would have to fall under a recognized ground in equity.

Whether a particular recognized ground in equity authorizes an award of attorney fees is a legal question reviewed de novo. *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). In this case, the Court of Appeals

24

No. 101149-1

discussed three recognized grounds in equity that might support a grant of attorney fees to Dalton. None of these grounds applies in this case.

### A. No basis for attorney fees as special damages

First, this court has recognized a limited class of claims for which attorney fees are available as special damages. *McCready*, 131 Wn.2d at 275. Slander of title is one of those claims. *Rorvig*, 123 Wn.2d at 856. The trial court awarded attorney fees to Dalton M in relation to its successful slander of title action. But the Court of Appeals reversed the slander of title judgment and correctly recognized that having done so, slander of title could no longer support an attorney fee award. *Dalton M*, 20 Wn. App. 2d at 941. Our case law confirms that attorney fees may be awarded only in connection with a prevailing claim.[5] No party has offered authority for the proposition that an award of attorney fees may be based solely on a losing claim.[6]

---

[5] *See N.Y. Life Ins. Co. v. Mitchell*, 1Wn.3d 545, 569-70, 528 P.3d 1269 (2023) (citing *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991); *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 143, 930 P.2d 288 (1997); *McLaughlin v. Travelers Com. Ins. Co.*, 196 Wn.2d 631, 643, 476 P.3d 1032 (2020); *King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 630, 398 P.3d 1093 (2017)); *Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 672, 989 P.2d 1111 (1999) (although "when parties prevail on any significant issue that is inseparable from issues on which the parties did not prevail, a court may award attorney fees on all issues," there still must be a prevailing claim for which attorney fees are permitted (citing *Blair v. Wash. State Univ.*, 108 Wn.2d 558, 740 P.2d 1379 (1987))).

[6] Dalton M argues that because the Court of Appeals did not reject the trial court's conclusion that the malicious publication element of slander of title was met, that element

25

No. 101149-1

The Court of Appeals also considered whether Dalton M's only remaining successful claim—the quiet title claim—could support an award of attorney fees as special damages. The court recognized that no published Washington case has awarded attorney fees in a quiet title action, and it concluded that Dalton M was not entitled to such fees. *Id.* (citing *Colwell v. Etzell*, 119 Wn. App. 432, 81 P.3d 895 (2003); *King County v. Squire Inv. Co.*, 59 Wn. App. 888, 801 P.2d 1022 (1990); *Magart v. Fierce*, 35 Wn. App. 264, 666 P.2d 386 (1983)). Dalton fails to provide any substantive argument about why attorney fees could be based on the quiet title action in this case.[7] We conclude that Dalton is not entitled to attorney

---

could serve as the basis for an award of attorney fees based on prelitigation bad faith conduct—even though the Court of Appeals reversed Dalton M's win on the slander of title claim. Resp't's Answer to Appellant's Pet. for Rev. at 19. We reject this argument. Dalton M has provided no authority for the proposition that an attorney fee award may be based on a losing claim. We can find no authority for that proposition, either.

[7] Washington cases appear to leave open the possibility that there *could* be a "right to recover attorney's fees" as damages in a successful quiet title action. *Magart*, 35 Wn. App. at 268; *Colwell*, 119 Wn. App. at 442-43 (damages are not "'typical[ly]'" available in quiet title cases) (quoting *Squire Inv. Co.*, 59 Wn. App. at 896); *Kobza v. Tripp*, 105 Wn. App. 90, 95, 18 P.3d 621 (2001) ("Because a quiet title action is a claim for equitable relief, damages are ordinarily not allowed.").  But Dalton M's argument on this issue is not persuasive. First, Dalton M raised it only in its response brief in the Court of Appeals—the brief in response to the new theory of recovery raised sua sponte by that court. Second, Dalton M's argument on this issue is supported only by a citation to an unpublished Court of Appeals case. Resp't's Answer to Appellant's Pet. for Rev. at 19 (citing *Gunn v. Riely*, No. 48701-2-II (Wash Ct. App. Sept. 12, 2017) (unpublished) https://www.courts.wa.gov/opinions/pdf/D2%2048701-2-II%20Unpublished%20Opinion.pdf). *Gunn* awarded attorney fees under the prelitigation bad faith equitable exception that is no longer viable after this court's decision in *Maytown*, 191 Wn.2d 392, as discussed in the next section. Therefore, we decline to apply *Gunn* here.

26

No. 101149-1

fees as special damages connected to quiet title, its only remaining prevailing

claim.

           B. No basis for attorney fees as costs under a recognized ground in
               equity

Washington courts have sometimes recited the existence of a "recognized

ground in equity" for a prevailing party to recover attorney fees as costs based on

the losing party's prelitigation bad faith conduct. *E.g.*, *Kottsick*, 86 Wn.2d at 390;

*Pearsall-Stipek*, 136 Wn.2d at 267 n.6. We have explained that this exception may

apply where "'misconduct of a party *amounting to contempt of court* has caused

the opposing party to incur counsel fees, or where a person retains possession of

property *after a judicial determination* of the wrongful character of his possession,

thus forcing the party wronged to the expense of further proceedings to recover

possession or otherwise enforce his rights.'" *State ex rel. Macri v. City of*

*Bremerton*, 8 Wn.2d 93, 105, 111 P.2d 612 (1941) (emphasis added) (citation

omitted) (quoting *Guay v. Bhd. Bldg. Ass'n*, 87 N.H. 216, 177 A. 409 (1935)). In a

recent Court of Appeals case, Division One rejected the prevailing party's

argument that it was entitled to attorney fees on this ground, emphasizing that

"[p]relitigation bad faith is not available as an equitable basis for an award of

attorney fees where the actions found to be taken in bad faith did not pose a threat

to the authority of the court." *Greenbank*, 168 Wn. App. at 519.

No. 101149-1

While numerous cases describe the prelitigation bad faith exception, we can find no case where this court has awarded (or affirmed) attorney fees on this ground. *See Miotke v. City of Spokane*, 101 Wn.2d 307, 338, 678 P.2d 803 (1984). And, in our recent decision in *Maytown*, we foreclosed the availability of this equitable ground altogether. 191 Wn.2d 392. In that case, a mining company and the Port of Tacoma sued the State on numerous grounds, including tortious interference. That claim was based on the State forcing the plaintiffs to undergo nearly two years of administrative proceedings that appeared to be aimed at delaying the mining company's ability to begin business operations, even though it already had an approved permit. *Id.* at 399-419. The plaintiffs prevailed on their tortious interference claim and sought attorney fees based on that claim. We affirmed the decision of the trial court to deny attorney fees either as special damages or as costs under the prelitigation bad faith exception to the American rule. *Id.* at 443. In fact, we foreclosed the availability of attorney fees as costs for prelitigation bad faith conduct in general. *Id.*

First, we explained that there is a narrow set of claims that can form the basis for awards of attorney fees as special damages, and noted that the plaintiffs did not prevail on any such action. *Id.* at 442-43 (citing *Rorvig*, 123 Wn.2d at 862). We then examined whether the plaintiffs should receive attorney fees as costs based on the prelitigation bad faith conduct of the defendant. We explained that

the answer was no: "to the extent such prelitigation attorney fees are recoverable, they are recoverable only as *damages* under some type of abuse of civil proceedings claim, not as *costs* or *sanctions* under the bad faith exception." *Id*. at 443. We further explained:

> The bad faith exception to the American rule arises out of a court's equitable power to regulate and manage the affairs of the court and the parties *before it*. Sanctioning parties for prelitigation conduct that occurred *before* the court was involved and *before* litigation was initiated exceeds the scope of that authority.

*Id.* (emphasis added) (citation omitted) (citing *Chambers*, 501 U.S. at 46). We concluded that "[c]ompensating aggrieved parties for harm caused by malicious, prelitigation conduct fits more naturally within the meaning of damages and *is therefore limited to that context*." *Id.* (emphasis added).

Here, as in *Maytown*, prior to Dalton M initiating this litigation, the court had no power to "regulate and manage the affairs" of U.S. Bank regarding title to Parcel 0402. There had been no prior judicial determination regarding quiet title or slander of title that U.S. Bank was defying. At trial, Dalton M prevailed on claims for quiet title and slander of title. Dalton M properly requested attorney fees related to slander of title; Dalton M did not state or litigate a claim for attorney fees based on U.S. Bank's prelitigation bad faith conduct. The trial court's award of fees was properly based on the prevailing slander of title claim. But when the Court of

29

No. 101149-1

Appeals reversed the slander of title judgment, it eliminated the only recognized equitable basis on which Dalton M could receive attorney fees as special damages.

### C. No basis for attorney fees untethered to any prevailing claim

Finally, the Court of Appeals suggested that it had the power to award attorney fees for prelitigation misconduct even if the award is untethered to any specific prevailing claim. *Dalton M*, 20 Wn. App. 2d at 959. But the opinion provides no support for such a broad departure from the general rule that attorney fees must be related to a prevailing claim. Indeed, doing so would undermine the rationale behind awarding attorney fees in the prelitigation bad faith context—in pre-*Maytown* cases, we said that the prevailing party is entitled to recovery because it was forced by the opponent's bad faith to vindicate a *judicially established right* in court. *Macri*, 8 Wn.2d at 113; *see also Greenbank*, 168 Wn. App. at 527. As stated above, we can find no authority for the proposition that attorney fees may be awarded without connection to a prevailing claim.

In sum, there is no valid basis on which Dalton may recover attorney fees. We reject the Court of Appeals' decision to award attorney fees on all of the possible grounds it discusses.

### III. "Malicious publication" requires more than negligence

Finally, the Court of Appeals reversed the slander of title judgment because it held that Dalton M had not met the "regarding a pending sale or purchase"

30

No. 101149-1

element of slander of title. The Court of Appeals, however, discussed the meaning

of the "malicious publication" element of the slander of title claim "because of its

relationship to Dalton M's claim for reasonable attorney fees." *Dalton M*, 20 Wn.

App. 2d at 934.

The slander of title claim is not before us. But the Court of Appeals'

decision on attorney fees is, and that court based its attorney fees analysis in part

on its definition of the malicious publication element of the doomed slander of title

claim. *Id.* We therefore must address the Court of Appeals' discussion of

malicious publication.

We disagree with the Court of Appeals' new definition of malicious

publication. The court defined the malice aspect of malicious publication as

including unintentional conduct. It ruled that malice included "reckless disregard"

and described malice as "an act performed with deliberateness and without

reasonable cause." *Id.* at 935 (citing *Duncan Land & Expl., Inc. v. Littlepage*, 984

S.W.2d 318, 332-33 (Tex. App. 1998)).

That definition conflicts with our precedent, which makes clear that the

malicious publication element of slander of title is not satisfied by "simple

negligence." *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 186 Wn.2d 58, 81,

375 P.3d 651 (2016). If it were, "a party claiming an erroneous but good faith

interest in real property would not be entitled to litigate his claim and have an

31

No. 101149-1

adjudication without fear of being penalized in damages." More generally, slander of title requires "intentional and calculated action" where the defendants "actually know" that their "intentional malicious acts" force the plaintiff to litigate. *Rorvig*, 123 Wn.2d at 862. We adhere to that precedent.

CONCLUSION

The Court of Appeals awarded attorney fees to Dalton M based on a new, separate, distinct theory of recovery that it raised sua sponte and that this court had previously rejected. The Court of Appeals then conducted its own fact-finding to decide that new theory, which was akin to a new claim. This violates our precedent and our RAPs.

We therefore reverse the Court of Appeals' award of attorney fees.

No. 101149-1

_____
Gordon McCloud, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Yu, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
Owens, J.

_____
Coburn, J.P.T.